```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

MATTHEW D. WILLIAMS,                 :
                                     :
     Plaintiff,                      :
                                     :
     v.                              :    CASE NO. 3:15cv673(RNC)
                                     :
RUSHMORE LOAN MANAGEMENT             :
SERVICES, LLC,                       :
                                     :
     Defendant.                      :
```

ORDER ON DISCOVERY MOTIONS

Plaintiff, Matthew D. Williams, brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA") alleging that defendant Rushmore Loan Management Services, LLC (hereinafter "Rushmore") engaged in improper collection tactics by making misrepresentations and communicating directly with plaintiff about his mortgage despite knowing that he was represented by counsel.  Pending before the court are plaintiff's motion to compel (doc. #50) and defendant's motion for protective order. (Doc. #58.)  I heard oral argument on February 10, 2016.  For the following reasons, plaintiff's motion is GRANTED IN PART and DENIED IN PART and defendant's motion is GRANTED.

I. Plaintiff's Motion to Compel

I rule on the disputed discovery requests as follows.

A. <u>Requests #1 & 7 – Servicing Agreement</u>

Rushmore objects to producing its unredacted servicing agreement on the ground that it contains confidential and proprietary business information that would cause irreparable harm if it were disclosed. Rushmore makes no showing to support this argument. "The mere fact that defendant deems these items to be proprietary does not (by itself) render them to be proprietary." <u>Demutis v. Sally Beauty Supply LLC</u>, No. 09CV92A, 2010 WL 1038679, at *3 (W.D.N.Y. Mar. 19, 2010). "[M]erely labeling the material 'proprietary and confidential' is not by itself sufficient to bar its production." <u>Novomoskvovsk Joint Stock Co. "Azot" v. Revson</u>, No. 95 CIV. 5399 (BSJ), 1996 WL 282085, at *1 (S.D.N.Y. May 28, 1996). The objection is therefore overruled.

Rushmore also objects that the servicing agreement is irrelevant.[1] This objection is overruled in part, and plaintiff's motion to compel is granted in part. To the extent that any sections of the servicing agreement discuss or relate to Rushmore's policies and protocols on debt collection or loss mitigation, Rushmore must disclose them to plaintiff.

---

[1] The parties agreed at oral argument that plaintiff is not entitled to, nor does he request, disclosure of any pricing information redacted from the servicing agreement.

2

B. <u>Request #3 – Attorney Account Notes</u>

This request was refined at oral argument to 354 pages of communications between Rushmore and its counsel. Rushmore objects, arguing that the communications are protected from disclosure by the attorney client privilege and the work product doctrine. It offers to produce the documents for <u>in camera</u> inspection.

"Where, as here, there is federal question jurisdiction, the court must apply federal common law with respect to attorney-client privilege. Fed.R.Evid. 501." <u>Leone v. Fisher</u>, No. 3:05CV521 (CFD)(TPS), 2006 WL 2982145, at *3 (D. Conn. Oct. 18, 2006). "The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice." <u>Chen-Oster v. Goldman, Sachs & Co.</u>, 293 F.R.D. 547, 554 (S.D.N.Y. 2013). "[I]n order to invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." <u>Rapkin v. Rocque</u>, 87 F. Supp. 2d 140, 143 (D. Conn. 2000) (internal quotation marks omitted). "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship . . . a burden not

3

discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984).

"The work product doctrine is distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 n. 11 (1975) (citing Hickman v. Taylor, 329 U.S. 495, 508 (1947)). The work product doctrine shields from disclosure documents and other materials prepared in anticipation of litigation or trial by a party or a party's representative, absent a showing of substantial need and the inability to obtain the substantial equivalent without undue hardship. Fed.R.Civ.P. 26(b)(3)(A); see also In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992). "Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)." United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998).

"[T]he work-product doctrine [also] shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." Nobles, 422 U.S. at 238. "An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information." Salomon

4

Bros. Treasury Litig. v. Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993).  The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney. See Nobles, 422 U.S. at 238-39; Carter v. Cornell Univ., 173 F.R.D. 92, 95 (S.D.N.Y. 1997).

With these principles in mind, counsel are ordered to meet and confer in a good faith effort to select a sample of the withheld communications.  See, e.g., Mehta v. Ace Am. Ins. Co., No. 3:10CV1617 (RNC), 2013 WL 3105215, at *1 (D. Conn. June 18, 2013) (finding defendant's privilege log to be insufficient, court "invited defendant to submit a sample of the allegedly privileged documents for in camera inspection").  By **February 23, 2016,** Rushmore's counsel shall submit to chambers for in camera inspection a representative sample that best illustrate the issues raised by the parties.  See Makhoul v. Watt, No. 11-CV-05108 (PKC)(VMS), 2014 WL 977682, at *5 (E.D.N.Y. Mar. 12, 2014) (noting that "the first step to settling the privilege dispute [is] to conduct an in camera review of a sample of documents from defendants' privilege log to determine whether they contain[] any information relevant to the existence of an attorney-client relationship).  The court will rule on the representative samples in the hope that such ruling will facilitate resolution of the pending dispute.  See, e.g., Unidad

5

4

Latina En Accion v. U.S. Dep't of Homeland Sec., 253 F.R.D. 44, 46 (D. Conn. 2008) (district court ordered counsel to submit "a discrete number of documents" for in camera inspection and ruling in an attempt to resolve dispute); see also Honda Lease Trust v. Middlesex Mut. Assur. Co., No. 3:05CV1426(RNC), 2007 WL 2889468, at *1 (D. Conn. Sept. 28, 2007) (same).

### C. Request #4 – Phone Calls

Prior to oral argument, the parties resolved this dispute and thus, plaintiff's motion to compel request for production #4 is denied as moot.

### D. Request #10 – Retainer Agreement

Rushmore withheld its retainer agreement and certain communications regarding its hiring of defense counsel, claiming that the information is protected from disclosure by attorney client privilege and the work product doctrine.  Rushmore represents that the retainer agreement is more than a simple retainer agreement because it reflects discussions between attorney and client about the prosecution of mortgage foreclosures.

Rushmore must disclose a redacted retainer agreement to plaintiff and submit the portion withheld on the basis of privilege for in camera inspection.  See, e.g., Torres v. Toback, Bernstein & Reiss LLP, 278 F.R.D. 321 (E.D.N.Y. 2012) (holding that retainer agreement between debt collection firm

6

and its client was not subject to attorney-client privilege, where identity of firm's client was not secret, nothing of confidential nature would be revealed by production of agreement, and firm had failed to identify any other special circumstances warranting application of privilege). Additionally, to the extent plaintiff contends that any communications identified in the privilege log are responsive to this request, the parties must include a representative sample for the court's <u>in camera</u> inspection by **February 23, 2016**.

    E. <u>Request #16 – Communications with Credit Bureaus</u>

Rushmore disclosed a report containing the dates it reported to the credit bureaus (doc. #52-5, "Bates 1484"), but did not produce the records used to generate the report or explain the abbreviations and codes in the report. At oral argument, plaintiff's counsel agreed to accept an affidavit of Rushmore's employee, Michael Bennett, explaining the reference codes used in Bates 1484 in lieu of the underlying records. Plaintiff's motion to compel this aspect of request for production #16 is granted as modified in open court.

Plaintiff also seeks disclosure of two of plaintiff's credit reports dated July 7, 2014 and September 4, 2014. At oral argument, Rushmore did not oppose the request. Plaintiff's motion to compel the two additional credit reports is granted absent objection.

II. <u>Rushmore's Motion for Protective Order</u>

Rushmore moves the court to enter a protective order in connection with the notices of deposition of Rushmore employees John Torres and Michael Bennett, who reside and work in California and Texas, respectively. Rushmore argues that the depositions are irrelevant and disproportionate to the needs of the case. Plaintiff responds that the depositions are necessary to discover information about Rushmore's collection and loss mitigation policies.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . . including . . . forbidding the disclosure or discovery." Fed.R.Civ.P. 26(c)(1). "The burden of showing good cause for the issuance of a protective order falls on the party seeking the order . . . . To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." <u>Torcasio v. New Canaan Bd. of Ed.</u>, No. 3:15CV00053(AWT), 2016 WL 312102, at *2 (D. Conn. Jan. 26, 2016) (citations and internal quotation marks omitted).

Federal Rule 26(b)(1), as amended December 1, 2015,[2] sets forth the scope and limitations of permissible discovery:

---

[2] The depositions were noticed on December 14, 2015, after the effective date of the amendment. (Doc. #58-1; 58-2.)

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense **and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.**

Fed.R.Civ.P. 26(b)(1) (emphasis added).  In his 2015 Year-End Report, United States Supreme Court Chief Justice John Roberts discussed the December 1, 2015 amendment to Rule 26(b), stating that the amended rule requires lawyers to "size and shape their discovery requests to the requisites of a case.  Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery."  Chief Justice's 2015 Year-End Report, www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf, at p. 7 (last visited Feb. 16, 2016).

   The advisory committee's notes explain that "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate

9

scope of discovery."  Fed.R.Civ.P. 26 advisory committee's note to 2015 amendment.

Plaintiff has not made an adequate showing to support the depositions of these two witnesses.  Plaintiff was able to file and argue his motion for summary judgment without the benefit of this discovery.  He has not made a specific proffer of the testimony he seeks to obtain from Torres and Bennett or how the testimony would be used to resolve the issues in this case.  The parties have conducted a fair amount of discovery, and these depositions appear to be of marginal utility.[3]  Additionally, although counsel cannot precisely calculate the cost of the depositions or estimate plaintiff's potential damages, it is obvious that the potential damages are not high,[4] and that the

---

[3] The FDCPA is a strict liability statute.  It forbids a debt collector from using "false, deceptive, or misleading representations or means in connection with the collection of any debt."  15 U.S.C. § 1692e; see also Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."); see, e.g., Clayson v. Rubin & Rothman, LLC, 751 F. Supp. 2d 491, 496 (W.D.N.Y. 2010) ("Since the FDCPA is a strict-liability statute, the undisputed evidence of defendant's communications suffices to establish, as a matter of law, that those communications violated [the FDCPA].")

[4] If successful, plaintiff's damages would be limited to: (1) actual damages, including compensation for any emotional distress he might have suffered as a result of Rushmore's putatively illegal collection tactics; (2) additional damages as the court may allow, up to $1,000; and (3) costs and reasonable attorney fees.  See 15 U.S.C. § 1692k(a).  Plaintiff's counsel agreed at oral argument that plaintiff's emotional distress is only of the "garden variety."  Gervais v. O'Connell, Harris &

10

cost of preparing for and taking these depositions is disproportionate to the needs of the case and plaintiff's potential recovery.

Rushmore's motion for protective order as to the depositions of Torres and Bennett is granted.

III. Conclusion

For the foregoing reasons, plaintiff's motion to compel (doc. #50) is GRANTED IN PART and DENIED IN PART and Rushmore's motion for protective order (doc. #58) is GRANTED.

SO ORDERED at Hartford, Connecticut this 16th day of February, 2016.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

---

Associates, Inc., 297 F. Supp. 2d 435, 440 (D. Conn. 2003) ("The FDCPA permits a court to award damages for emotional distress.").  There are no punitive damages. Id.