UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------ x
                               :
 MATTHEW D. WILLIAMS,          :
                 Plaintiff,    :      Civil No.
                               :   3:15-CV-00673(RNC)
           vs.                 :
                               :      June 23, 2016
 RUSHMORE LOAN MANAGEMENT      :
 SERVICES, LLC,                :
                 Defendant.    :
                               :
------------------------------ x
```

Federal Building
450 Main Street
Hartford, Connecticut


MOTION FOR SANCTIONS


(Transcription from Electronic Recording)


Held Before:

THE HON. DONNA F. MARTINEZ
United States Magistrate Judge


Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:

    For the Plaintiff:

        LAW OFFICE OF JOANNE FAULKNER
        123 Aven Street
        New Haven, Connecticut  06511-2422
        203-772-0395
            BY:  JOANNE S. FAULKNER,ESQ.


    For the Defendant:

        HUNT LEIBERT CHESTER & JACOBSON, PC
        50 Weston Street
        Hartford, Connecticut  06120
        860-240-9140
            BY:  GEOFFREY K. MILNE, ESQ.
                JENNIFER M. McGRATH, ESQ.

1          (Proceedings commenced at 10:32 a.m.)

2

3          THE COURT:  Good morning.

4          MS. FAULKNER:  Good morning, your

5     Honor.

6          THE COURT:  All right.  This is

7     Williams v. Rushmore Loan, 15-Civil-673

8     assigned to Judge Chatigny.  Will you

9     identify yourselves, please?

10          MS. FAULKNER:  I'm Joanne Faulkner,

11     your Honor, the attorney for Plaintiff

12     Matthew Williams.

13          THE COURT:  Good morning.

14          MR. MILNE:  And good morning, your

15     Honor, Geoff Milne for the Defendant

16     Rushmore Loan Management Services.  With me

17     is my partner, Peter Ventre from Hunt

18     Leibert.

19          MR. VENTRE:  Good morning, your Honor.

20          THE COURT:  Good morning.

21          All right.  So we have this morning

22     arguing on the Defendant's Motion for

23     Sanctions.  It's at the docket at number

24     101.  Go ahead.

25          MR. MILNE:  Yes.  If your Honor please.

1           Your Honor, just by way of background

2      I'm going to ask that the Court take

3      judicial notice of what I'll refer to as

4      Williams 2, which is attached as Exhibit C

5      to our memorandum of law in support of the

6      motion for sanctions, and also ask that the

7      Court take judicial notice of Exhibits A and

8      B to our memorandum of law.

9           Exhibit A is the Plaintiff's August 27,

10     2015 second set of discovery that was issued

11     to the Defendant.  Exhibit is the

12     Defendant's -- excuse me, the Plaintiff's

13     response to the Defendant's first set of

14     interrogatories and request for production

15     directed to Matthew Williams.  And Exhibit C

16     is the Williams 2 lawsuit.

17          THE COURT:  Okay.

18          MR. MILNE:  And in addition to that,

19     your Honor, our office produced records in

20     response to the second set of discovery

21     which consists of Bates numbers 1370 through

22     Bates 1439.  I for purposes of the record on

23     this motion would ask that the Court take

24     judicial notice that we served those records

25     -- I don't know if counsel will stipulate to

1          that.  I have copies of them but I think

2          it's relevant to the arguments that we

3          intend to make this morning.

4               THE COURT:  What are the Bates numbers?

5               MR. MILNE:  1370 through 1439, and they

6          consist of a series of what I will call

7          mortgage statements that begin in December

8          of 2014 and the date of the last one is May

9          11th of 2015.

10              THE COURT:  And you're asking the

11         Plaintiff's stipulation of what?

12              MR. MILNE:  That these documents were

13         produced in the course of this case pursuant

14         their discovery request.

15              THE COURT:  Were they, Ms. Faulkner?

16              MS. FAULKNER:  They were, your Honor,

17         but I don't know that you can take judicial

18         notice of them because they are not in the

19         record of this court.

20              THE COURT:  I don't think he's asking

21         me to take notice.  I think he's asking me

22         to question you as to whether they were

23         received in discovery.

24              Am I understanding you?

25              MR. MILNE:  That's right.  I'm not

1          offering for the truth of the matter

2          asserted, your Honor.  So that they were

3          produced.

4               MS. FAULKNER:  And, yes, they were

5          produced, your Honor.  And with regard to

6          Exhibits A and B they are not part of the

7          record and you may not take judicial notice

8          thereof.

9               THE COURT:  Well, they're part of the

10         record because they've been attached.

11         You're saying I can't take judicial notice

12         of them.

13              MS. FAULKNER:  Because they are not

14         part of the record prior to this, yes.

15              THE COURT:  Yep, I understand.

16              MS. FAULKNER:  I'm sorry.

17              MR. MILNE:  If your Honor please, if

18         there is any dispute about whether Exhibits

19         A and B are a part of the record, if I have

20         to I'll put Attorney Faulkner on the witness

21         stand.  I'd prefer not to do that.

22              THE COURT:  Well, they're part of the

23         record, right?  You've attached them.

24              MR. MILNE:  Yes.

25              THE COURT:  They are part of the

```
 1              record.  I think the question to Ms.
 2              Faulkner is are they what they purport to
 3              be.  So Exhibit A, which I don't have at my
 4              fingertips, is --
 5                   MR. MILNE:  May I approach, your Honor?
 6                   THE COURT:  Yes.  Sure.
 7                   (Pause.)
 8                   MR. MILNE:  Your Honor, Exhibit A is a
 9              copy of the second set of discovery dated
10              August 27, 2015 issued by Attorney Faulkner
11              in this case.
12                   THE COURT:  All right.
13                   Is that what it is as far as you're
14              concerned, Ms. Faulkner?
15                   MS. FAULKNER:  Yes, your Honor.
16                   THE COURT:  Okay.
17                   MR. MILNE:  And your Honor, if I may
18              approach with respect to Exhibit B.
19                   THE COURT:  Okay.
20                   MR. MILNE:  Your Honor, Exhibit B is a
21              copy of the Plaintiff's responses to
22              discovery request issued by the Defendants
23              of the verification for Mr. Williams.  It's
24              dated January 8 of 2016.  It's probably also
25              an admission.
```

```
1              THE COURT:  Okay.

2              You have had a look at that, Ms.

3        Faulkner?

4              MS. FAULKNER:  Yes, your Honor.

5              THE COURT:  Is that what it is?

6              MS. FAULKNER:  That is what it is, your

7        Honor.

8              THE COURT:  Okay.

9              MR. MILNE:  And your Honor, what I

10        would direct the Court to in Exhibit B is

11        the response I believe to Interrogatory 11.

12              THE COURT:  What page is that on?  Oh,

13        I have it, page 7.  Interrogatory 11 as to

14        your claim that the Defendant violated 15

15        USC 1692(f).  Explain fully and state the

16        facts which support the allegation.  Is that

17        it?

18              MR. MILNE:  Yes, that's it, your Honor.

19              THE COURT:  All right.

20              MR. MILNE:  And just by way of

21        background, obviously the Court is familiar

22        with Williams 1.  And Williams 1 has

23        allegations in it that deal with the

24        servicing of Mr. Williams' mortgage loan and

25        address credit reporting issues and the
```

1        conduct of Rushmore from July of 2013

2        through at least April of 2015.

3            Attorney Faulkner in her -- or Mr.

4        Williams in his discovery responses

5        indicates that one of the claims they're

6        making in this case in Williams 1 is a

7        violation of 15 USC 1692(f) as set forth in

8        the discovery response and specifically

9        Interrogatory 11.  And it's crystal clear

10       based on Exhibit A that there were discovery

11       requests issued by the Plaintiff in this

12       case that dealt with periodic statements

13       that were issued in connection with the

14       servicing of this loan by Rushmore.

15           The second suit which the Court now has

16       in the record was filed while this case was

17       still pending and before this Court

18       conducted a mediation on May 11th.  It was

19       filed but it had not been served and the

20       service has been effectuated subsequent to

21       the mediation and that case has been

22       assigned to Judge Underhill.

23           The second case mirrors the first case

24       in that it makes false credit reporting

25       allegations, improper servicing allegations,

1         and makes the same challenges to the monthly

2         statements, the periodic statements that are

3         the subject of the discovery requests that

4         were issued in Williams 1.

5              Our contention is that what the

6         Plaintiff did in this case and/or counsel,

7         was to engage in claims play.  They filed a

8         duplicative suit when the first case was

9         pending.  They may argue that there is one

10        different party, and to be clear they added

11        Hunt Leibert as a party and they added state

12        law claims and some other facts.

13             As to their allegation in the second

14        case that there was failure to respond to an

15        inquiry under Regulation X, we've cited in

16        our brief at page 3 that there's no cause of

17        action under Regulation X for a failure to

18        respond to it based on a Second Circuit

19        case, *Kilgore v. Ocwen Loan Servicing*, 89

20        F.Supp.3d 526.  It's a 2015 decision.

21             The Plaintiff may also say, well, we

22        added Hunt Leibert as a party to the second

23        case and therefore it's not duplicative.

24        There are allegations in the first case with

25        respect to a letter that was sent by Hunt

1        Leibert involving a notice, I don't recall

2        off the top of my head what the notice was,

3        but there are allegations in the first case

4        that deal with the conduct of Hunt Leibert

5        as well.

6              In addition, the first case has credit

7        reporting allegations against Rushmore --

8              THE COURT:  So let me just ask you one

9        question at the outset -- well, actually two

10       questions.  One, have the district judges,

11       Judge Chatigny and Judge Underhill been made

12       aware of the two cases, that the two cases

13       are related?

14             MR. MILNE:  The short answer is no.  My

15       understanding is there was no civil cover

16       sheet filed with the District Court, and as

17       your Honor knows that form says or has a

18       section of it that says is there a related

19       proceeding.  That form to the best of our

20       knowledge was never filed with the Court

21       because we couldn't find it on the Court

22       system.

23             THE COURT:  Okay.

24             Have you made the Court aware?

25             MS. FAULKNER:  Well, to the extent that

1          the Williams 2 alleges the first cause of

2          action in its first paragraph, in the first

3          paragraph of Williams 2 we allege that this

4          is after Williams 1.  So that's before the

5          Court.

6               I have not filed a notice of related

7          cases because I don't think they are related

8          enough and because they're in terribly

9          different postures.  So I don't think that

10         these two cases are related to the extent

11         that they should be consolidated.

12              I think they're related to the extent

13         that discovery in Williams 1 should be

14         admissible in Williams 2.  But other than

15         that the cases have different causes -- some

16         same causes of action, different causes of

17         action, different parties.  And this case is

18         -- discovery is closed; there are two or

19         three dispositive motions pending.  The

20         other case they don't even have to file an

21         answer until next month.

22              THE COURT:  Okay.

23              MS. FAULKNER:  So they're in very

24         different procedural postures.

25              THE COURT:  Okay.

1           The second question is the case against

2       Rushmore and all those issues aside, what's

3       to prevent the Plaintiff from filing a

4       second separate action against the law firm.

5           MR. MILNE:  Because the allegations in

6       the first case include the conduct of the

7       law firm through a period in 2015, and our

8       contention is that that's duplicative.  So

9       the record is clear there's been no motion

10      to dismiss filed on behalf of -- excuse me,

11      motion for sanctions filed on behalf of the

12      law firm.  I'm here arguing simply on behalf

13      of Rushmore.

14          THE COURT:  Okay.

15          MR. MILNE:  I want the record to be

16      clear on that.

17          So if your Honor please, we've cited

18      case law in our brief.  The *Salebe*

19      (phonetic) case perhaps is the closest and

20      that's I believe a Judge Hall decision that

21      Attorney Faulkner was in.  And in the *Salebe*

22      case there was a first lawsuit that was

23      filed and I believe a fair debt claim was

24      made in the first suit.  And in the second

25      case there was fair credit reporting unfair

1           trade practice and other state law claims

2           that were advanced.  And the defendant in

3           that case then opposed consolidation and

4           moved for summary judgment arguing that the

5           second suit was part of the first suit.  And

6           Judge Hall dismissed the second case and

7           denied the defendant's motion for summary

8           judgment.

9                And to be clear the relief that we're

10          seeking with this Court is --

11               THE COURT:  What was the basis for her

12          dismissing the second case?

13               MR. MILNE:  It was based on the fact

14          that there could be claim preclusion, issue

15          preclusion or collateral estoppel related to

16          the findings in the first case.

17               THE COURT:  So why isn't that the

18          argument here?

19               MR. MILNE:  Well, it's certainly a part

20          of it but there's another wrinkle here.  If

21          the allegations in Williams 1 on which

22          discovery has been conducted are a part of

23          Williams 1, and the interrogatory response

24          number 11 says the answer to that is yes,

25          then any parallel proceeding on the same

1          fact pattern is duplicative.  And so it's

2          our contention that there are two things

3          that occurred here fundamentally that were

4          inappropriate.  One was to conduct discovery

5          for a matter that's pending to file a

6          separate suit, which is improper because

7          discovery has to be with respect to a claim

8          or defense; it can't be with respect to

9          other things.

10             The second issue is there's a statutory

11          damage limitation of $1,000 per FDCPA case.

12          So if the Court takes the argument of

13          Rushmore that we're making, the Court could

14          find that there was discovery done in the

15          first case to launch a second case, and that

16          at least part of the reason for that was to

17          circumvent the statutory limitation of

18          $1,000 per FDCPA case.  And I think based on

19          the discovery responses it's crystal clear

20          in Interrogatory 11 that the periodic

21          statements were part of the first case and

22          they are central to the allegations in the

23          second case as well as duplicative credit

24          reporting claims and separate claims against

25          Hunt Leibert.

```
 1                    So for all of those reasons we contend
 2              that there's a basis to impose sanctions.  I
 3              don't take that request lightly.  I filed
 4              one other Rule 11 motion in 25 years as a
 5              lawyer and it was granted by Judge Burns in
 6              2004.  But this is not a --
 7                    THE COURT:  I'm sorry -- did you comply
 8              with the safe harbor provision of Rule 11?
 9                    MR. MILNE:  We did.  We sent a letter
10              to counsel with a copy of the motion and the
11              21-day period elapsed prior to the filing of
12              this motion.
13                    THE COURT:  Is that in the record?
14                    MR. MILNE:  I don't know if counsel
15              wants to contest that, but that occurred.  I
16              don't think there's any dispute about that.
17                    MS. FAULKNER:  No, there is no dispute
18              about that, your Honor.
19                    THE COURT:  Okay.  Go ahead.  I
20              interrupted you.
21                    MR. MILNE:  And so that's the relief
22              that we are seeking, if your Honor please.
23              And counsel's argument that the filing of a
24              lawsuit is not grounds for sanctions under
25              28 USC 1927 misses the mark because we're
```

1          not simply arguing that there was a second

2          case that was filed that's the basis for

3          sanctions, it's the fact that there was

4          discovery launched in the first case that

5          provided in theory a basis colorably to file

6          the second case, and if the claim is in the

7          first case, it stays in the first case.  How

8          can it bleed into the second case?  And I

9          don't think there's any basis to do

10         discovery in one case to launch further

11         litigation in a separate case.  I think

12         that's completely inappropriate.  And what

13         it in theory could create is a perpetual

14         litigation mill in FDCPA cases where you

15         simply continue to issue discovery to find

16         other grounds to assert, don't assert them

17         in the first case, file a second one, and

18         then a third one and a fourth one and fifth

19         one.  This is completely why claim splitting

20         has been recognized as a doctrine that needs

21         to be applied to manage a docket.

22               And so for all those reasons, your

23         Honor, we're asking that the Court enter an

24         economic sanction against counsel.  We filed

25         an affidavit of attorney's fees with the

1          Court.  I will note that on page 7 I had

2          asked for an additional two hours of time,

3          I'm requesting an additional four hours of

4          time which is $860, and the math would be

5          860 plus the 1994.95 would be 2,854.95.

6               And so the record is clear, the relief

7          we're seeking today is without prejudice to

8          the right to challenge Williams 2 in the

9          second case.  And to be clear, Hunt Leibert

10         is not counsel of record for Rushmore in the

11         second case.  Hunt Leibert would be

12         represented separately in the second case.

13              So we are -- with the relief we are

14         seeking today is not a request to redeem to

15         be --

16              THE COURT:  Let me make sure I follow

17         that.  So in the second case you're not

18         counsel for anyone?

19              MR. MILNE:  We're counsel for Hunt

20         Leibert, not counsel for Rushmore.

21              THE COURT:  Okay.  All right.

22              MR. MILNE:  And so to be clear,

23         whatever relief we are seeking today is not

24         intended to limit the relief we are seeking

25         or Rushmore will be seeking in the second

1    case.

2         THE COURT:  So the suggestion that's

3    right beneath the surface I guess, is that

4    there was something unreasonable or in bad

5    faith or nefarious about the Plaintiff

6    seeking or obtaining this discovery in

7    Williams 1, and then using it to launch

8    Williams 2.

9         So what if a Plaintiff just trips over

10   something that provides the basis of another

11   lawsuit?  I mean you've seen her response.

12   She said, look, there's a dividing line,

13   Williams 1 ended at one point in time and

14   the case is too far along, I can't

15   incorporate Williams 2 into Williams 1 for

16   that reason, but there's actionable conduct

17   that follows.  And I wasn't sneaky about it,

18   I got the information from the Defendant.

19        MR. MILNE:  Because Rule 26 requires

20   discovery to relate to a claim or a defense

21   in a case, and in the first instance not

22   only was that information squarely within

23   the discovery request from the Plaintiff, it

24   was squarely within the answer to

25   Interrogatory 11 that there was a violation

```
 1            of the FDCPA based on the response to

 2            Interrogatory 11.  So therefore that is the

 3            basis for the claim of a periodic statement

 4            and there's a statutory damages cap with

 5            respect to that.  And as we noted in the

 6            Calvert case, and I know counsel will

 7            disagree with that, Calvert says the

 8            pervasiveness -- and it's not a Second

 9            Circuit opinion but I think it's squarely on

10            point -- Calvert says you look at the

11            persistence of violations in assessing

12            damages in an FDCPA case.

13                 THE COURT:  Um-hum.

14                 MR. MILNE:  And the reason we took the

15            time to look at these other cases from other

16            circuits is because it deals with the issue

17            of duplicative litigation and the expense

18            that's involved with the parties in filing

19            multiple lawsuits based on what's

20            essentially one servicing of a loan within a

21            specific period of time.  This isn't like it

22            was servicing in 2004 versus 2015.  This is

23            servicing within the same year of the loan.

24            And to be clear, the first case spans from

25            2013 into 2015, and some of those
```

 1          allegations even go back to 2009.

 2              So for all of those reasons, your

 3          Honor, we believe that the second suit was

 4          filed in bad faith and we're asking the

 5          Court to enter economic sanctions.

 6              THE COURT:  When was the discovery that

 7          you point to is evidence of the second suit

 8          being filed and in bad faith?

 9              MR. MILNE:  I don't understand your

10          Honor's question.

11              THE COURT:  When was that discovery

12          served and responded to?

13              MR. MILNE:  The requests were issued

14          August 27th of 2015, so quickly after the

15          suit was filed.  And the discovery

16          compliance was issued January -- oh, wait,

17          I'm sorry.  Nope, I withdraw that, your

18          Honor.

19              The records were produced in October of

20          2015, the billing statements, and then Mr.

21          Williams' interrogatory response was January

22          11 of 2016.  Stated differently, the second

23          case is filed after his Interrogatory 11

24          admission that the periodic statements were

25          part of the first case.

1             THE COURT:  Okay.  Thank you.

2             Go ahead, Ms. Faulkner.

3             MS. FAULKNER:  Your Honor, Rule 11

4       sanctions can be granted where a party's

5       actions and filings are objectively

6       unreasonable.  I haven't heard anybody say

7       that filing a second suit or answering

8       discovery in the first suit was objectively

9       unreasonable.

10            Under Section 1927 the actions have to

11      be completely without merit.  Both of these

12      lawsuits are fully meritorious.  Judge Hall

13      said in *Bristol Heights* that when

14      objectively unreasonable claims, and none of

15      these are objectively unreasonable, are

16      combined with multiple filings, District

17      Courts have occasionally inferred improper

18      purpose.  She refused to infer an improper

19      purpose in that case.  That's *Bristol*

20      *Heights* 2013 Westlaw 5313408.

21            We have a long series of Second Circuit

22      cases that all say it is perfectly proper if

23      after you file one case the violations

24      continue, you may file another case,

25      subsequent case for the subsequent

1          violation.  All those cases are uniform;

2          they've been for many, many years, and none

3          of them say it is claim splitting to file a

4          second suit for violations which occur after

5          the first suit.  They just say it's

6          perfectly proper.

7               THE COURT:  Is that whole line of cases

8          in your brief?

9               MS. FAULKNER:  It is, your Honor, yes.

10              THE COURT:  Okay.

11              MS. FAULKNER:  I especially want to

12         call your attention to *Curtis v. Citibank*

13         which was 226 F.3d 133, where it says even

14         where the plaintiff in that case filed a

15         motion to amend the complaint in the first

16         case and it was denied, they could still

17         being the second case.

18              So what we're doing here is bringing

19         the second case for violations which

20         occurred after the May cutoff date of the

21         first case.

22              THE COURT:  So why didn't you file a

23         motion to amend in the first case?

24              MS. FAULKNER:  Because it was very late

25         when the new -- some of the new violations

1          didn't occur until very late in the year

2          after discovery closed and after summary

3          judgment was filed.  But I just thought it

4          was too late and too complicated to bring in

5          a whole new set of facts into the first

6          case.

7              With regard to the discovery that they

8          complain about, this discovery was aimed at

9          the counterclaim.  At the time in question

10         there was a foreclosure counterclaim that

11         had been filed, so this second set of

12         discovery in August of 2015 was aimed at the

13         foreclosure action that had been -- the

14         foreclosure counterclaim that had been

15         filed.  But you will notice that when I

16         filed a motion to compel, which is ECF

17         number 50, I expressly did not pursue any of

18         the interrogatories or production requests

19         that went to the foreclosure counterclaim.

20         I expressly pursued only -- and I think I

21         said it specifically -- only what was

22         alleged in the complaint.  I moved to compel

23         responses to the extent they relate to the

24         complaint herein, so I wasn't going to move

25         to compel the responses as to the

1           foreclosure counterclaim unless and until it

2           stayed in the case, which it did not.

3                So when we had our hearing on the

4           motion to compel, your Honor, it was very

5           clear at that time that I was asking for

6           only records that existed at the start of

7           the litigation.

8                Page 17 of document number 81, "I'm not

9           asking for any records after the start of

10          the litigation obviously."

11               Page 20 of document 81, "I'm just

12          interested in anything relating to the 2014

13          and thereafter, prior to the date of the

14          litigation."  That's lines 2 and 3.

15               Line 21, "I'm looking for the Rushmore

16          documents prior to the inception of this

17          case."

18               Page 23 of document 81, line 19, "And

19          again I'm not asking for anything after the

20          beginning of this lawsuit because this

21          foreclosure that he's talking about is after

22          the beginning of this lawsuit."

23               Page 26 of document number 81 regarding

24          the motion to compel the Court -- line 16,

25          I'm sorry.

1        "The Court:  And I'm hearing you say

2        that you say the cutoff is when the

3        litigation began."

4        Me, "Yes.  This litigation, yes, your

5        Honor."

6        Then we have Rushmore's responses to

7        these interrogatory requests and production

8        requests.  Dated October 21, 2005 (sic) to

9        the request in their Exhibit A, the second

10       set of discovery, Rushmore objects, overly

11       broad, unduly burdensome, not reasonably

12       calculated to lead to the discovery of

13       admissible evidence.  Rushmore responses.

14       And what I was asking for there was the

15       attorney corporate advances which didn't

16       start until well after the lawsuit.

17       The entry does not appear on any

18       mortgage statement issued for the subject

19       loan from December 1 through May 11, 2015.

20       So that's all they answered.  They didn't

21       want to answer anything beyond the outset of

22       the discovery.  They gave me lots of

23       information but it all ended as of the date

24       of the prior lawsuit.

25       The statements, the periodic statements

1          they gave me all ended as of the date of the

2          prior lawsuit.  The information in their

3          initial disclosures all ended as of the date

4          of the prior lawsuit.  They did not give me

5          one thing and they refused to answer as to

6          anything after the date of this lawsuit.

7               So it seems to me the admission shoe is

8          on the other foot, your Honor.  What they

9          have -- they claim I was looking for

10          information as to the next lawsuit, but they

11          objected to that information.  They wouldn't

12          give it to me, and I didn't follow up on it

13          because it was after the date of the

14          lawsuit.

15               The one thing that they --

16               THE COURT:  Is that all on the record?

17               MS. FAULKNER:  Is what all on the

18          record?

19               THE COURT:  Do I have that before me,

20          what you're telling me now?

21               MS. FAULKNER:  You may have it.  It may

22          be in exhibit -- no, you don't, because I

23          didn't move to compel on this.

24               THE COURT:  Okay.

25               MS. FAULKNER:  Yeah.  And if you would

1    like me to submit this I am sure Mr. Milne

2    will not differ with me that those were his

3    answers to discovery.

4         THE COURT:  Well, I need that in some

5    sort of user friendly format.  I don't want

6    you to hand up pages.

7         MS. FAULKNER:  No, because I got my

8    marking on it, I'm sorry.  But I will

9    supplement my opposition with these

10   documents.

11        THE COURT:  Do you disagree with any of

12   this?

13        MR. MILNE:  I do, your Honor.  I don't

14   want to interrupt counsel.

15        THE COURT:  Yes.

16        MR. MILNE:  I do, and not in any

17   particular order.  We did produce records

18   that go beyond the filing of this lawsuit

19   which I think was May of 2015.  I know

20   there's at least one mortgage statement

21   that's dated May 11 of 2015.  We produced a

22   payoff statement that was from October of

23   2015 and there likely are other documents as

24   well.  The index on this is significant.

25   There's over 1,400 records on this index

1          alone.

2               So I can't -- I can submit something

3          that shows what goes beyond the filing of

4          the lawsuit, but I do want to comment on the

5          purpose of the discovery.

6               THE COURT:  Let's make sure we haven't

7          stolen the mic from the Plaintiff.

8               MS. FAULKNER:  I'm not sure what Mr.

9          Milne is looking at but there were two sets

10         of responses, two sets of initial

11         disclosures.  One was related only to this

12         lawsuit and one was related to both the

13         lawsuit and the foreclosure counterclaim.

14         So to the extent that they responded to the

15         foreclosure counterclaim, that is not part

16         of what I understand is going to be

17         introduced in this case because there is no

18         foreclosure counterclaim.

19              THE COURT:  Okay.  Anything else you

20         want to say?

21              MS. FAULKNER:  With respect to Exhibit

22         B, again he likes our response to

23         Interrogatory 11 that the -- referring to

24         the periodic statements produced by

25         Defendant in discovery, those were the

1          periodic statements up to the date of the

2          lawsuit, and it said they may have

3          overstated the amount of the debt.  But once

4          again they refused to give me any

5          information when I asked for it, so I did

6          not pursue that as far as this case is

7          concerned.

8               MR. MILNE:  If your Honor please, to be

9          clear Interrogatory 11 is based on the

10         allegation in this case that the Defendant

11         violated 15 USC 1692(f), and that allegation

12         is contained within paragraph 24 of the

13         lawsuit in this case.  So we take issue and

14         part company with counsel that this

15         discovery related to the periodic statements

16         related to the mortgage foreclosure.

17              It's clear that not only was a 15 USC

18         1692(f) claim made in the case to begin

19         with, but this interrogatory response

20         identifies that there's an FDCPA violation

21         and it relates back also to Interrogatory

22         Number 6, which deals with a different

23         misrepresentation related to fees and costs

24         that's allegedly contained within those

25         statements.

1          So counsel's argument that there wasn't

2     enough time to process that information in

3     the context of this case doesn't hold true

4     based on the facts of when the documents

5     were produced.  These periodic statements

6     were issued in October.  Counsel moved for

7     summary judgment in December of 2015.  So

8     there was at least two months to incorporate

9     that into the summary judgment, and we

10    contend in our papers that counsel

11    prematurely moved for summary judgment.

12         If I recall it correctly, there was a

13    summary judgment two weeks before Christmas

14    and then a notice of deposition three or

15    four days later for the Plaintiff -- excuse

16    me, the Defendant, and we then filed a

17    motion for protective order saying, well,

18    you've already moved for summary judgment,

19    you don't need discovery because you've

20    already got a pending summary judgment.  And

21    ultimately your Honor granted the protective

22    order with respect to those depositions.

23         So it's clear that whatever decision

24    counsel made to move for summary judgment

25    and when, that was their decision.  But this

```
1              information was within their possession and
2              control.  There's no colorable argument that
3              there was information that they didn't have
4              that they needed to file the second case.
5              And our argument is that if we're going to
6              go through the time and expense of the
7              discovery in the first case related to those
8              issues and there's an interrogatory
9              admission from the Plaintiff that the claim
10             is in the case, well, then it's claim
11             splitting to take it out and put it in
12             another case.
13                 I mean it just doesn't make any sense
14             and it also circumvents that statutory
15             limitation on $1,000 statutory damages per
16             case.  In theory, it would allow people to
17             file in perpetuity an unlimited number of
18             cases.
19                 THE COURT:  All right.  I think I
20             understand the arguments.
21                 Anything more?
22                 MS. FAULKNER:  Well, your Honor, I
23             don't see any basis for sanctions here.  But
24             if there is a basis for sanctions I would
25             like an order to show cause so that I can
```

```
 1            address whatever concerns the Court has and
 2            I can consult with independent counsel if
 3            need be.
 4                 THE COURT:  Order to show cause --
 5                 MS. FAULKNER:  Telling me what my
 6            violations are.  Why I'm --
 7                 THE COURT:  Well, I think you're being
 8            told what the violations are.
 9                 MS. FAULKNER:  But I don't see them,
10            that's the problem.  If there's something
11            that I could see --
12                 THE COURT:  Well, I understand.  I
13            understand that you disagree but this is the
14            time to be heard.
15                 MS. FAULKNER:  Okay.  Well, then as I
16            said before there is nothing under the long
17            line of Second Circuit cases that is
18            sanctionable here.
19                 I'm going to file a supplement to
20            address these discovery issues if that's --
21            within a couple of days, your Honor.
22                 THE COURT:  Why don't we wait for that.
23            Let's -- why don't you give me a time to
24            review the papers, and rather than ask you
25            for supplemental information in a piecemeal
```

1          way, let me see if and what I need and then

2          maybe I can, if I need it, call for one

3          document submitted by both of you so I don't

4          have to be putting a discovery jigsaw puzzle

5          together.  So thank you for the offer but

6          hold off on that.

7                  MS. FAULKNER:  Thank you.

8                  MR. MILNE:  And if your Honor please,

9          the only other offer that I have is there

10         were discovery responses we provided in

11         October of 2015 to interrogatories issued by

12         the Plaintiff.  And specifically one of

13         those interrogatories dealt with recoverable

14         advances on the mortgage statements.  It was

15         a response to discovery issued August 27,

16         2015 and the response deals with a request

17         of an itemization of the expenses on those

18         mortgage statements.

19                 So I would -- and I would offer that.

20         I don't know if -- I'm happy to show

21         counsel.  And to be clear the offer that I'm

22         making is solely with respect to the date

23         that the compliance was provided and

24         specifically the response to Interrogatory

25         13, and I would offer that because it also

1              shows that there was active discovery

2              related to the periodic statements in the

3              first case and her specific discovery

4              related to that.

5                   THE COURT:  Let's wait for that to --

6              I'd rather -- I understand the proffer and

7              I'd rather get whatever supplemental

8              information I need in one package because

9              it's easier for me to work with that way.

10                  MR. MILNE:  Understood.

11                  THE COURT:  Is there anything else you

12             want to say about the proffer?

13                  MR. MILNE:  No, your Honor.

14                  THE COURT:  Okay.  All right.

15                  MS. FAULKNER:  Your Honor?

16                  THE COURT:  Yes, ma'am.

17                  MS. FAULKNER:  I also had filed a

18             motion to compel last week.  Is that going

19             to go up --

20                  THE COURT:  I don't think that's been

21             --

22                  MS. FAULKNER:  Document 111.

23                  THE COURT:  Yep.  Let me have a look.

24                  It's referred but the Defendant's

25             response isn't due until July 5th.  So it's

```
 1              not ripe.
 2                   MS. FAULKNER:  Okay.
 3                   THE COURT:  It has been referred
 4              though.
 5                   MS. FAULKNER:  Thank you.
 6                   THE COURT:  All right.
 7                   All right.  Thank you, Counsel.
 8                   MR. MILNE:  Thank you, your Honor.
 9                   MR. VENTRE:  Thank you.
10                   (Proceedings concluded at 11:12 a.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                            CERTIFICATE

2

3                I hereby certify that the foregoing 36

4    pages are a complete and accurate transcription to the

5    best of my ability of the electronic recording of the

6    Motion for Sanctions in re:  MATTHEW D. WILLIAMS vs.

7    RUSHMORE LOAN MANAGEMENT SERVICES, LLC, Civil No.

8    3:15-CV-00673 (RNC) held before The Hon. Donna F.

9    Martinez, United States Magistrate Judge, in Hartford,

10   Connecticut, on June 23, 2016.

11

         *Suzanne Benoit*

12   _____

13   Suzanne Benoit, Transcriber          Date:  6/29/16

14

15

16

17

18

19

20

21

22

23