UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW D. WILLIAMS

v.                                    CASE NO. 3:15 CV 673 (RNC)  (DFM)

RUSHMORE LOAN MANAGEMENT SERVICES LLC

<u>PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>

Mr. Williams sued Rushmore, an entity that admittedly acquired his mortgage loan for servicing long after default, alleging it violated the black letter of the Fair Debt Collection Practices Act (FDCPA) during its pre-foreclosure efforts to obtain payment or modification of the mortgage payments by (1) communicating with him knowing he was represented by attorney, 15 U.S.C. §1692c(a)(2);[1] (2) communicating false information to a credit bureau, 15 U.S.C. §1692e(8);[2] (3) including in its communications with him charges that were not due, 15 U.S.C. §1692(f(1);[3] or (4) falsely stating that his property was in foreclosure and that foreclosure was imminent on a date certain, 15 U.S.C. §1692e(2)(A).[4]

The undisputed facts show that in order to avoid having to enforce the investor's security interest, Rushmore besieged Mr. Williams for payment for years after taking over servicing of his loan in 2013. Rushmore's Rule 56(a)(1) Statement shows over 60 efforts to collect before this lawsuit. ECF No. 129-2. Indeed, Rushmore solicited and accepted payments, which it has never refunded. Rushmore inexcusably continued its direct-to-plaintiff collection efforts unabated, even after this case was filed. See attached. Consistently, Rushmore even continued its collection efforts in this suit, by filing a

---

[1]  This issue is awaiting decision in Summary Judgment Motion, ECF No. 56, filed 12/17/15.
[2]  This issue is awaiting decision in ECF No. 94, filed 3/26/16 and fully briefed.
[3]  Plaintiff's unopposed motion in limine concerned this issue. ECF No. 120, filed 9/12/16.
[4]  Plaintiff's unopposed motion in limine concerned this issue. ECF. No. 123, filed 10/25/16.

foreclosure counterclaim and affirmative defenses seeking set-off and recoupment (forbidden by Mr. Williams' bankruptcy discharge). ECF No. 13 at 4, 11. Then Rushmore even insisted on  a settlement conference where it also insisted on discussing mortgage payment arrangements – a discussion which it later disclosed to third parties and the public. ECF No. 122.

Rushmore did not even retain an attorney for its principal's foreclosure until June 2016. ECF No. 129-3 at 3 ¶ 17. In the 2016 state foreclosure case, the principal, GMAT, confirmed loan modification discussions (requests for payment) based on Rushmore's collection efforts; it even mentioned Rushmore's request for payment arrangements in the settlement conference with this Court. ECF No. 122-1.

Without permission of the Court and well beyond the time for a dispositive motion, Rushmore has moved for summary judgment, claiming it was not collecting a debt, and -- based on its guess that a jury will find no actual damages -- claiming that Mr. Williams has no Article III standing.[5]

Whether Rushmore is a debt collector was briefed in connection with plaintiff's pending Motion for Summary Judgment. ECF No. 56. ECF No. 66-1 at 16-17, 24; ECF No. 70 at 6. It was also briefed in Williams II (Williams v Rushmore & Hunt Leibert, Civ. No. 3:16cv517 (RNC) (DFM)), ECF No 25-1 at 13-19 and ECF No. 28 at 2-4. There is no change in the law or other reason for Rushmore to get another bite at that apple.

Rushmore raised the Spokeo standing issue in its surreply, ECF No. 108 (June 6, 2016), and in Williams II,  ECF No 25-1 at 11-12 and ECF No. 28 at 13-19. Spokeo issues are simply not viable in an FDCPA case where a collector has violated black letter

---

[5] Article III standing. Spokeo, Inc. v. Robins,  136 S. Ct. 1540, 2016 WL 2842447 (May 16, 2016).

law and statutory damages are available. <u>Strubel v. Comenity Bank</u>, 842 F.3d 181, 188-91 (2d Cir. 2016).

<u>Undisputed facts</u>

Rushmore's summary of its efforts to avoid foreclosure (ECF 129-1 at 2-6) as well as its Local Rule 56 Statement and Affidavits show that Rushmore made at least 31 efforts over a three year period to get Mr. Williams to enter into a loan modification. In addition, it admittedly sent monthly statements "since it began servicing the account" in 2013. ECF No. 129-3 at 7 ¶42. Those 30+ statements -- not required by law -- repeatedly mentioned the "**Amount Due**," set forth the payments due and payments unpaid, the due dates, and included a payment coupon to facilitate payment. ECF No. 129-3 at 90-93. Rushmore's explanation of the "**Amount Due**" (ECF no. 129-3 at 92) was:

> (5) **Amount Due: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY**, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

Rushmore's Rule 56 Statement  has thus admitted over 60 oral and written efforts in a three year period to elicit payments from Mr. Williams instead of enforcing its principal's security interest.

<div align="center">

### FDCPA PRINCIPLES CONTRAVENE RUSHMORE'S POSITION

</div>

Plaintiff previously set forth some general principles for the Court to apply in interpreting the FDCPA. ECF No. 123-1 at 2-3. In <u>Hart v. FCI Lender Servs., Inc.</u>, 797 F.3d 219, 226–27 (2d Cir. 2015), the Second Circuit explained its holding that a simple Real Estate Settlement Procedures Act (RESPA) notice of transfer of mortgage servicing was an effort to collect a debt with reasoning that unequivocally establishes coverage in

<div align="center">3</div>

this case. Here, there was not merely a simple notice as in Hart, but a barrage of calls and letters and periodic statements, all aimed at getting Mr. Williams to make payments.

Based on Hart, Rushmore's claim that it was not attempting to collect a debt fails. In Hart, the Second Circuit applied the FDCPA to a mortgage servicer like Rushmore. It noted, "[W]e must view the communication objectively, asking whether Hart has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent "in connection with the collection of [a] debt," rather than inquiring into the sender's subjective purpose." Id. at 225. "[W]e think that treating an attempt to collect a debt as a communication 'in connection with the collection of any debt' easily accords with the plain meaning of the broad statutory language, as well as with the Act's remedial purpose of halting abusive collection practices and giving debtors adequate information about their rights and obligations." Id. at 226 (emphasis added). "Hart has sufficiently alleged that the Letter—viewed objectively—is an attempt to collect a debt. The Letter references Hart's particular debt, directs Hart to 'mail [his] payments, including all past due payments, to FCI Lender Services, Inc.' at a specified address, and refers to the FDCPA by name." Id. This recitation of the facts in Hart describes many Rushmore documents here. Indeed, the Second Circuit concluded that recitation with the following:

> Finally, and most importantly, the Letter, in its two-page attachment, emphatically announces itself as an attempt at debt collection: "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." Id. A reasonable consumer would credit the Letter's warning, its instruction to take action within thirty days, and its statement that it represents an attempt to collect a debt.

Id. Most of the Rushmore documents, and virtually all its phone calls, included this "effort to collect a debt" disclosure required by FDCPA §1692e(11). "[W]e are hard put to accept that a reasonable *consumer* receiving the Letter would necessarily understand

4

that FCI did not send the Letter in connection with the collection of her debt. And we see

no reason that the Letter could not serve more than one purpose in any event." Id. at 226-

27. The Court continued:

> "[A] debtor receiving the Letter has no reason to know that the language is

required by the FDCPA or to believe that the language mandated by § 1692e can safely

be disregarded on that basis." Id. at 227.

> > To the contrary, as we have highlighted, the Letter clearly announces itself an
> > attempt to collect a debt, and its other text only emphasizes the plausibility and
> > gravity of that announcement. We see no reason why we should not take it at its
> > word, nor any reason that a consumer would (or indeed should) fail to credit the
> > clear language of the document.

Id. Even though the simple RESPA letter in Hart was not as aggressive or persistent as

the tactics of Rushmore here, "that Congress cited the industry's worst practices when

passing the FDCPA does not limit the statute's purview to those practices, when the text

reaches well beyond. " Id. at 228.

> The Second Circuit noted that where the collector's purpose was, at least in part,

to elicit payments, the collector must comply with the FDCPA:

> > Our decision in *Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2d Cir. 1998), is
> > also instructive on this point. In *Romea,* we rejected a debt collector's argument
> > that a particular letter was not a "communication" under § 1692g because it was a
> > "statutory condition precedent to commencing a summary eviction proceeding"
> > under New York law. *Id.* at 116. We held that the collector's purpose was "at least
> > in part to induce Romea to pay the back rent she allegedly owed," and we
> > therefore ruled it "a 'communication' under 15 U.S.C. § 1692g(a)." *Id.*

Id. at 226 n.7.  Finally, the Second Circuit noted that the FDCPA contained no statutory

exemption for RESPA notices:

> > Section 1692g instructs that a communication required by certain statutes, such as
> > the Gramm–Leach–Bliley Act, 15 U.S.C. § 6801 *et seq.,* shall "not be treated as
> > an initial communication in connection with debt collection for purposes of this
> > section." 15 U.S.C. § 1692g(e). RESPA is not among the enumerated statutes.

Id. at 227 n.8.  There is no statutory exemption for any loss mitigation requirements either.

Rushmore's arguments here were soundly rejected by Hart, whose jurisprudence controls the current question.

## I. RUSHMORE DID NOTHING *EXCEPT* ENGAGE IN DEBT COLLECTION

Rushmore nonsensically claims that its years of trying to elicit loan modification payment arrangements instead of foreclosing was not "debt collection." Rushmore admits it did not lift a finger to enforce its investor's security interest until well after this action was filed. Rushmore claims it was trying to avoid enforcing any security interest. ECF No. 129-1 at 9. Rushmore even accepted payments in the expectation that the parties could modify the loan payments so that the security interest need not be enforced.

This case has nothing to do with enforcement of security interests; it has to do with FDCPA violations while Rushmore was actively pursuing payment in order to avoid enforcing a security interest and to produce a performing loan for an investor, GMAT, who bought the plaintiff's loan as part of a portfolio of defaulted mortgage loans, well after default.

Rushmore admits that its efforts were subject to the FDCPA. Rushmore emphatically insists that every document it sent included some variation on the theme: "This is an attempt to collect a debt and any information obtained will be used for that purpose. Rushmore is acting as a 'debt collector' as that term is defined in the federal fair debt collection practices act. ***This notice is required by the Federal Fair Debt Collection Practices Act.***" E.g., ECF No. 129-1 at 6, 16, and passim. Plaintiff agrees that in everything Rushmore did, it was required to comply with the Federal Fair Debt

Collection Practices Act. Rushmore was acting as a debt collector attempting to get Mr. Williams to make payments, and agree to payment arrangements.

Inconsistently, even though Rushmore's primary purpose and duty was to collect, and it had done nothing to enforce a security interest before hiring a lawyer to foreclose in June 2016, Rushmore now claims that it was not attempting to collect a debt. Rushmore now claims it is subject only to an inapplicable provision not alleged in the Amended Complaint: 15 U.S.C. §1692f(6), which prohibits "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property." In Connecticut, there is no nonjudicial means to "effect dispossession" of property. A mortgagee cannot unilaterally dispossess a landowner of his property in Connecticut, unlike states that have a simple land filing procedure for nonjudicial foreclosure. One must judicially foreclose and judicially evict the landowner.

A. Foreclosure is debt collection. Rushmore seems to have abandoned its original theory that "foreclosure is not debt collection." That theory is simply untenable in view of unanimous appellate authority that activity *in addition to* enforcement of a security interest is subject to the FDCPA. "Because Epsten sent the May Notice as a debt collector attempting to collect payment of a debt—irrespective of whether it also sought to perfect the HOA's security interest and preserve its right to record a lien in the future—it is subject to the full scope of the FDCPA." Mashiri v. Epsten Grinnell & Howell, --- F.3d ----, 2017 WL 127565, at *5 (9th Cir. Jan. 13, 2017).[6] *See also* Alaska Tr., LLC v.

---

[6] "As we recently observed in *Ho [v. ReconTrust Co., 840 F.3d 618 (9th Cir 2016)]*, '[i]f entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors.' 840 F.3d at 622. *Ho* addressed whether a trustee's communications—limited solely to pursuing non-judicial foreclosure—were debt collection activities for purposes of the FDCPA. *Id.* at

Ambridge, 372 P.3d 207, 213 (Alaska 2016) ("That Congress intended the FDCPA to apply to home mortgages is evident not just from the Act's broad language but also from its legislative history."), noting that the regulatory authority, the Consumer Financial Protection "Bureau is adamant in its view that home mortgage foreclosures are subject to the FDCPA." Id. at 214. If "Congress had intended to exempt from the FDCPA one whose principal business is the enforcement of security interests," then Congress "would have provided an exception in plain language." Shapiro & Meinhold v. Zartman, 823 P.2d 120, 124 (Colo. 1992). It did not.

Unanimous Circuit Court cases stand for the proposition that if a debt collector asks for payment in connection with foreclosure, it is subject to the FDCPA. See, e.g., Glazer v. Chase Home Finance LLC, 704 F.3d 453, 464 (6th Cir. 2013) (mortgage foreclosure is debt collection under the FDCPA);[7] Reese v. Ellis, Painter, Ratterree &

---

619–20, 623. In contrast to this case, the trustee sought to enforce a secured loan and sent a notice of default that did not request payment but instead 'merely informed Ho that the foreclosure process had begun, explained the foreclosure timeline, apprised her of her rights and stated that she could contact [the lender] (not [the trustee] ) if she wished to make a payment.' Id. at 623. We held that where an entity is engaged solely in the enforcement of a security interest and not in debt collection, like the trustee and unlike Epsten, it is subject only to § 1692f(6) rather than the full scope of the FDCPA. See id. at 622 ("We do not hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests.... We hold only that the enforcement of security interests is not always debt collection.").

Mashiri, 2017 WL 127565, at *5.

[7] The Glazer decision finds the plain language of the FDCPA broadly encompasses foreclosure activities:

In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt). As one commentator has observed, the

*Adams, LLP,* 678 F.3d 1211, 1218 (11th Cir 2012) (rejecting the distinction between attempts to collect a debt and purported attempts to enforce a security interest); *Birster v. American Home Mortg. Servicing, Inc.,* 481 Fed. Appx. 579, 583 (11th Cir. 2012) (holding that a mortgage loan servicer's alleged conduct supported the conclusion that it engaged in debt collection activity in addition to its activity to enforce security interest); *Glover v. F.D.I.C.,* 698 F.3d 139, 152 n.8 (3d Cir. 2012) (requesting payment before foreclosure); *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 362 (6th Cir. 2012) (holding that a mortgage loan servicer can be either a creditor or a debt collector but cannot "define itself out of either category," and was a debt collector in that case); *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 386 (7th Cir. 2010) (letter offering to discuss "foreclosure alternatives" and asking for financial information in order to initiate that process); *Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 376 (4th Cir. 2006) (holding that the FDCPA may apply to efforts to recoup a debt through foreclosure, stating that to hold otherwise "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt"); *Piper v. Portnoff Law Assocs., Ltd.,* 396 F.3d 227, 234 (3d Cir. 2005) (stating that "the text of the FDCPA evidences a Congressional intent to extend the protection of the Act to consumer defendants in suits brought to enforce liens").

---

existence of redemption rights and the potential for deficiency judgments demonstrate that the purpose of foreclosure is to obtain payment on the underlying home loan. Such remedies would not exist if foreclosure were not undertaken for the purpose of obtaining payment.

Glazer, 704 F.3d  at 461.

Second Circuit cases have long recognized the applicability of the FDCPA in a foreclosure context. Gabriele v. Am. Home Mortg. Servicing, 503 Fed. Appx. 89, 96, n.1 (2d Cir. 2012) (state procedural technicalities do not violate the FDCPA); Vincent v. The Money Store, 736 F.3d 88 (2d Cir. 2013) (whether mortgagee that acquired after default had used a name other than its own in violation of FDCPA); Hooks v. Forman, Holt, Eliades & Ravin, LLC, 717 F.3d 282, 283 (2d Cir. 2013) (pre-foreclosure letter); Roth v. CitiMortgage, Inc., 756 F.3d 178, 183 (2d Cir. 2014) (not subject to FDCPA where no allegation mortgage acquired after default); Hart v. FCI Lender Servs., Inc., 797 F.3d 219, 224 (2d Cir. 2015) (transfer of servicing letter subject to FDCPA §1692g); Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86 (2d Cir. 2016) (**FDCPA applies to foreclosure activities post-bankruptcy**).

Notably, the Second Circuit *could* not have discussed FDCPA aspects of foreclosure unless it first determined that foreclosure activities were within its subject matter jurisdiction, i.e. being an effort to collect a consumer debt by a debt collector. "The fact that neither party raised a jurisdictional issue on appeal is of no matter; we are obligated to determine whether jurisdiction exists *nostra sponte*." Kalson v. Paterson, 542 F.3d 281, 286 n.10 (2d Cir. 2008) (citations omitted).

B. A mortgage is a debt. Rushmore's new theory is that a mortgage is not a "debt." ECF No. 129-1 at 8. This, despite its persistent and correct assertions that Rushmore *was* attempting to collect a debt and was subject to the FDCPA. The new theory is directly contradicted by the cases that apply the FDCPA in the mortgage context, cited above. It is also directly contrary to the statutory definition of "debt": debt "means any obligation or alleged obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. §1692a(5). Mr. Williams has an alleged obligation, based on a mortgage, to pay money arising out of a mortgage transaction for his residential property. Indeed, he is the owner of the equity of redemption, so he must agree to pay or make payment arrangements to save his home.

Rushmore also overlooks the definition of "debt collector": one who "directly or indirectly" "collects or attempts to collect" debts "asserted to be owed another." §1692a(6). The definition section has no exception for collecting a mortgage. It would create a gaping hole in the FDCPA's coverage to release debt collectors from compliance as long as the debt they are collecting is secured. As the Eleventh Circuit explained: "The practical result [of that rule] would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't." Reese v. Ellis, Painter, Ratterree & Adams, LLP, 668 F.3d 1211, 1218 (11th Cir. 2012).

C. Rushmore was not enforcing a security interest. Rushmore was not "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property." 15 U.S.C. §1692f(6).  The only way to "enforce" a mortgage security interest in Connecticut is to judicially foreclose. By its own admission, Rushmore did not hire a foreclosure lawyer or initiate any foreclosure until after this case was filed, so the complaint does not allege or include any wrongful foreclosure activity. Rushmore was doing everything *except* enforcing a security interest. It was admittedly trying to avoid foreclosure by discussing payment arrangements and loan modification.

Normally, 15 U.S.C. §1692f(6) applies to unfair practices by entities that do not otherwise engage in collection efforts, such as repossession agents, property preservation companies, and holders of mechanic's or artisan's liens. The section also applies to wrongful foreclosure. <u>Minnifield v. Johnson & Freedman, LLC</u>, 448 F. App'x 914, 916 (11th Cir. 2011). But mortgage servicers who insistently pursue payment instead of foreclosure, as here, are subject to the entire FDCPA, and are not exclusively within that section.

    D. <u>Rushmore's bankruptcy disclaimers are belied by its collection efforts</u>

Rushmore insisted that it was a debt collector attempting to collect a debt. Then (in *some* of its written communications) it added ambiguous boilerplate language attempting to retract that assertion if the recipient had filed bankruptcy.[8] Where the debtor had filed bankruptcy, such a disclaimer is "at best confusing to an unsophisticated consumer and at worst an intentionally misleading attempt to induce unsuspecting consumers into paying money on nonexistent debts." <u>Donnelly-Tovar v. Select Portfolio Servicing, Inc.</u>, 945 F. Supp. 2d 1037, 1048 (D. Neb. 2013). "A disclaimer stating that the letter 'is not an attempt to collect a debt,' does not make that true, especially in view of indications on the face of the document that the communication is intended to obtain money and is connected to a present or former obligation to pay an indebtedness." <u>Id.</u> "If the letter is not an attempt to collect a debt, then it can only be an attempt to defraud or extort money from a person with no obligation to pay it or solicitation of a gift." <u>Id.</u>

---

[8] For instance, instead of a direct renunciation, Rushmore merely hinted that the FDCPA required notice "does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States." ECF No. 129-3 at 90.

As one court noted in the context of an analogous FDCPA disclaimer, it "has a certain surreal quality. . . . Even an informed reader might find the logic more evocative of Dali than of Euclid. And the hypothetical 'least sophisticated debtor,' from whose point of view the letter is assessed under FDCPA, might just be baffled." Bock v. Pressler & Pressler, LLP, 30 F. Supp. 3d 283, 295 (D.N.J. 2014), *as corrected* (July 1, 2014), *as corrected* (July 7, 2014) (citation omitted).[9]

In.Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 361 (6th Cir .2012), the court noted that FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended.  The Seventh Circuit rejected disclaimer language in Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 382 (7th Cir. 2010) ("If you are not obligated on the debt, or if the debt has been discharged in a bankruptcy proceeding, the Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the real estate may be affected.").  Likewise, the Fourth Circuit court gave no credit to a self-serving attempt to evade the Act through a disclaimer. Wilson, 443 F.3d at 375.

"'Commonsense' says that despite the disclaimers, the language in the letters is more than a sufficient basis to state a claim that Bayview was contacting Harrer 'in connection with' an 'obligation of a consumer to pay money.'" Harrer v. Bayview Loan Servicing, LLC, 2016 WL 6995559, at *2 (N.D. Ill. Nov. 30, 2016) (collecting cases).

Bankruptcy courts, of course, routinely see through such disclaimers. *See* Schinabeck v. Wells Fargo Bank (In re Schinabeck), 2014 WL 5325781 at *8 (Bankr.E.D.Tex. Oct. 20, 2014) ("[t]he cumulative effect of those [mortgage loan

---

[9] In a different  FDCPA context, the Seventh Circuit commented, "the notice's implication to the contrary makes the statement more misleading, not less." Ruth v. Triumph P'ships, 577 F.3d 790, 802 (7th Cir. 2009)

statements] is not dissolved by the inclusion of a disclaimer"); <u>In re Hernandez</u>, 2014 WL 5794840, at *3 (Bankr. S.D. Tex. Nov. 6, 2014) ("A disclaimer cannot change the true nature of a communication."); <u>In re Cousins</u>, 404 B.R. 281, 284 (Bankr. S.D. Ohio 2009) (a self-serving disclaimer "does not obviate the fact that the invoice seeks payment from the [d]ebtor"); <u>In re Villareal</u>, 401 B.R. 823, 833 (Bankr. S.D. Tex. 2009) (holding that in the context of a homestead disclaimer, "[a] disclaimer cannot change the character of a true homestead") (internal quotation marks omitted); <u>In re Connor III</u>, 366 B.R. 133, 135 (Bankr. D. Hawaii 2007) ("The only purpose for sending the monthly statements after that point was to induce Mr. Connor to make payments on a prepetition debt which was dischargeable and has now been discharged."); <u>In re Joens</u>, 2003 WL 22839822, at *2–3 (Bankr. N.D. Iowa Nov.21, 2003).("informational purposes only");  <u>In re Draper</u>, 237 B.R. 502, 506 (Bankr. S.D. Fla. 1999) ("The only credible reason to send such invoices on a monthly basis is to try to collect payments from debtors protected by the automatic stay."). Rushmore's self-serving disclaimers did not cure the prohibited attempts to collect from Mr. Williams.

Rushmore's self-serving disclaimers are a reprehensible attempt to unilaterally force a consumer to give up his FDCPA rights. Even a "consumer's consent cannot waive protection from the practices the FDCPA seeks to eliminate....Permitting such a waiver would violate the public policy goals pursued by the FDCPA." <u>Clark v. Capital Credit & Collection Services, Inc</u>., 460 F.3d 1162, 1171 n. 5 (9th Cir. 2006). *See also* <u>Walters v. Performant Recovery, Inc.</u>, 124 F. Supp. 3d 75, 81 (D. Conn. 2015) ("a waiver argument under the FDCPA does not have a high likelihood of success"*). Consumers cannot waive statutory rights as a matter of public policy. <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S.

36, 51 (1974) (no prospective waiver of statutory rights allowed); Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178, 1180-81 (11th Cir. 1982); Buford v. American Fin. Co., 333 F. Supp. 1243, 1248 (N.D. Ga. 1971) (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704 (1945); Mills v. Home Equity Group, Inc., 871 F. Supp. 1482, 1486 (D.D.C. 1994).

Rushmore's actions speak louder than its ambiguous disclaiming words. There is no doubt that it was trying to collect a debt, as it repeatedly assured Mr. Williams, and that in fact it did accept and retain payments.

## II. ACTUAL DAMAGES ARE NOT REQUIRED FOR STANDING.

In Part II of its motion, Rushmore claims that Mr. Williams will not be able to prove actual damages, and therefore that he has no "concrete injury."[10] Contrary to defendant's position at ECF No. 129-1 at 22-23, actual damages under 15 U.S.C. § 1692k(a)(1) are not required for constitutional standing where, as here, plaintiff has alleged black letter violations of the FDCPA, exactly what Congress intended to prevent by enacting the FDCPA. Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003) ("the fact that plaintiff did not ever pay any attorneys' fees to NAN does not necessarily suggest that he was not injured for purposes of his FDCPA claim, if he can show that UC & S *attempted* to collect money in violation of the FDCPA."); Jacobson v.

---

[10]  In 2012, the range for garden variety emotional distress in this Circuit was $30,000 to $100,000. Abel v. Town Sports Int'l, LLC, 2012 WL 6720919, at *16 (S.D.N.Y. Dec. 18, 2012). Actual damages can take many forms including both concrete damages in the forms of costs and "humiliation and mental distress." Bach v. First Union Nat. Bank, 149 F. App'x 354, 361 (6th Cir. 2005); *see also* Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 240 (4th Cir. 2009) (damages included "(1) loss of opportunity in the home mortgage market, (2) emotional distress, and (3) loss of income from missing approximately 300 hours of work addressing [the defendant's] mistakes.").

Healthcare Fin. Servs., 516 F.3d 85, 96 (2d Cir. 2008) ( "[T]he FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations.");   Ehrich v. I.C. Sys. Inc., 681 F. Supp. 2d 265, 269 (E.D.N.Y. 2010) ("the 'injury in fact' analysis is directly linked to the question of whether plaintiff has suffered a cognizable statutory injury and not whether a plaintiff has suffered actual damages"); Lemire v. Wolpoff & Abramson, L.L.P., 256 F.R.D. 321, 326 (D. Conn. 2009) ("the Second Circuit does not require the consumer to demonstrate damages in order to have an 'injury' that suffices to establish standing to sue under the FDCPA").

In Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 2016 WL 2842447 (May 16, 2016), the Court remanded so the Ninth Circuit could consider whether the allegations of procedural violations showed a material risk of "concrete" injury. Concrete means "real," not "abstract," but "it is not necessarily synonymous with `tangible.'… Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."  Spokeo, 136 S. Ct. at 1549. Spokeo recognized that Congress "may `elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law,'" citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992). Spokeo, 136 S. Ct. at 1549. Spokeo goes on to state: "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [and] its judgment is also instructive and important."  Although "Article III standing requires a concrete injury even in the context of a statutory violation,"  "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in

such a case need not allege any *additional* harm beyond the one Congress has identified." (emphasis in the original). Id.

The Court in Spokeo emphasized that Congress can elevate even the violation of procedural rights to a concrete injury if they protect against an identified harm, and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." 136 S. Ct. at 1549. Thus, where Mr. Williams' allegations are aligned with the harm that Congress sought to curb, he need not allege any additional harm beyond the one Congress identified. The Supreme Court in Spokeo made clear that if Congress indicated that it sought to protect against a certain harm (like being subjected to false, deceptive or misleading representations in collection letters sent by debt collectors) a plaintiff will have standing to sue if (like Mr. Williams was) they are subjected to that harm.

Justice Thomas's concurrence in Spokeo provides additional clarity on this point, explaining that when Congress creates new private rights – such as those afforded by the FDCPA to prevent deception and abuse by debt collectors – Article III standing exists once those private rights have been invaded:

> When Congress creates new private causes of action to vindicate private or public rights, these Article III principles circumscribe federal courts' power to adjudicate a suit alleging the violation of those new legal rights. **Congress can create new private rights and authorize private plaintiffs to sue based simply on the violation of those private rights**. See Warth v. Seldin, 422 U. S. 490, 500 (1975). A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right. See Havens Realty Corp. v. Coleman, 455 U. S. 363, 373–374 (1982) (recognizing standing for a violation of the Fair Housing Act); Tennessee Elec. Power Co. v. TVA, 306 U. S. 118, 137–138 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege")

Spokeo, 136 S. Ct. at 1553 (emphasis added).

None of this is new.

Based on Spokeo, courts agree that "the Supreme Court has made clear an injury need not be tangible to be concrete." Church v. Accretive Health, Inc., 2016 WL 3611543, at *3 (11th Cir. July 6, 2016); Syed, v. M-I, LLC, --- F.3d ----, 2017 WL 242559, at *4 (9th Cir. Jan. 20, 2017) ("By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a 'chain[ ] of causation that will give rise to a case or controversy.'"); Biber v. Pioneer Credit Recovery, Inc., 2017 WL 118037, at *3 (E.D. Va. Jan. 11, 2017) ("Not surprisingly, in the wake of Spokeo, the overwhelming majority of courts have held that FDCPA claims similar to Biber's are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact."); see Id. at n.5 (citing a long string of cases supporting the statement); Bautz v. ARS Nat'l Servs., Inc., 2016 WL 7422301, at *1 (E.D.N.Y. Dec. 23, 2016) ("Thus, in cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim without need to allege a "material risk of harm" because the infringement of that right constitutes, in and of itself, a concrete injury" "In contrast, here, the claim involves an alleged materially false and misleading statement that is a substantive violation of Section 1692e, and confers standing upon the plaintiff…"); Paz v. Portfolio Recovery Assocs., LLC, 2016 WL 6833932, at *2 (N.D. Ill. Nov. 21, 2016) ("incomplete credit disclosure creates the risk of an inaccurate credit rating. This risk of financial harm is a concrete harm, even though the harm was first defined and articulated by Congress."); Bowse v. Portfolio Recovery Assocs., LLC, 2016 WL 6476545, at *3 (N.D. Ill. Nov. 2,

2016) ("Because Bowse has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, Bowse has Article III standing to bring this suit."); Dickens v. GC Servs. Ltd. P'ship, 2016 WL 3917530, at *2 (M.D. Fla. July 20, 2016) ("Congress, through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of this right is not hypothetical or uncertain."); Lane v. Bayview Loan Servicing, LLC, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016) ("Lane has alleged a sufficiently concrete injury because he alleges that Bayview denied him the right to information due to him under the FDCPA."); McCamis v. Servis One, Inc., 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016) ("Plaintiff alleges a concrete and particularized injury in fact: Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt."); In re Robinson, 2016 WL 4069395, at *5 (Bankr. W.D. La. July 28, 2016) ("debt collector under the FDCPA may be subject to statutory damages and attorneys' fees even if no actual damages are proven."); Irvine v. I.C. System, Inc., 2016 WL 4196812, at *3 (D. Colo. July 29, 2016) (communicating misinformation about plaintiff's debt to credit reporting agencies); Ung v. Universal Acceptance Corp., 2016 WL 4132244, at *2 (D. Minn. Aug. 3, 2016) ("[T]he receipt of unwanted phone calls constitutes a concrete injury sufficient to create standing under the TCPA."); Daubert v. NRA Grp., LLC, 2016 WL 4245560, at *2 (M.D. Pa. Aug. 11, 2016) (account number showing on envelope: "intangible injuries can also be concrete injuries sufficient to confer standing"); Prindle v Carrington Mortgage

Services, LLP, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016) ("because Prindle had a personal statutory right to be free from abusive debt-collection practices, and because she has alleged facts plausibly showing that Carrington violated that right, she 'need not allege any additional harm.'").

The Consumer Financial Protection Bureau agrees "that a person who has been subjected to a misrepresentation made unlawful by 15 U.S.C. § 1692e suffers a concrete injury that satisfies Article III." See Letter Brief submitted to the Third Circuit, attached.

Rushmore makes only a passing reference to the controlling Spokeo authority in the Second Circuit, no doubt because that authority confirms that plaintiff indeed has standing because of Rushmore's repeated violation of the black letter of the FDCPA. Strubel v. Comenity Bank, 842 F.3d 181, 188-191 (2d Cir. 2016). "While tangible harms are most easily recognized as concrete injuries, *Spokeo* acknowledged that some intangible harms can also qualify as such. *See id.* at 1549. In deciding whether an intangible harm—such as the failure to receive a required disclosure—manifests concrete injury, a court is properly respectful of Congress's judgment in affording a legal remedy for the harm." Id. at 188. "In short, some violations of statutorily mandated procedures may entail the concrete injury necessary for standing." Id. at 189.[11]

Following Strubel, the court in Girdler v. Convergent Outsourcing, Inc., 2016 WL 7479541, at *2–3 (D. Mass. Dec. 29, 2016), held that violations of the disclosure provisions of §1692e(11) and §1692g(a) of the FDCPA constituted concrete injury.

---

[11] "Further, as to these two challenges, Strubel sues to vindicate interests particular to her—specifically, access to disclosures of her own obligations—as a person to whom credit is being extended, preliminary to making use of that credit consistent with TILA rights." Strubel, 842 F.3d at 191.

"While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete." Id. at *3. The court in Dominguez v. Macy's Retail Holdings Inc., 2016 WL 7440791, at *2 (D. Ariz. Dec. 27, 2016) also followed Strubel in holding that even "bare procedural allegations were enough to demonstrate the 'concrete injury necessary for standing.'" Likewise,

> In any event, even assuming *arguendo* that plaintiff's alleged Section 1692e claim could somehow be considered to be a procedural, rather than substantive, violation of the FDCPA, the Court holds that plaintiff still has standing, under *Spokeo* and *Strubel*, because, as to the particular alleged violation in this case, she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying [statutory] interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.' " *Strubel*, 842 F.3d at 189 (brackets omitted) (quoting *Spokeo*, 136 S.Ct. at 1549).

Bautz v. ARS Nat'l Servs., Inc., 2016 WL 7422301, at *1 (E.D.N.Y. Dec. 23, 2016).

As a matter of law, Rushmore is mistaken in claiming that plaintiff does not have concrete injury if he does not recover actual damages. Article III concrete injury is not the same as actual damages. Rushmore's intense and, apparently, intentionally disturbing collection activity belies its argument that there is no "concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." Here, Rushmore harmed, in multiple ways, the very specific underlying consumer interests that the FDCPA was enacted to prevent.

III.  RUSHMORE ERRATA

A. Rushmore took several positions in its memorandum that are factually or legally unsupported. For instance, ECF No. 129-1 at 1 claims that Mr. Williams seeks to expand the reach of the FDCPA. Rather, since all appellate authority agrees that the FDCPA applies to efforts to collect a mortgage debt, it is Rushmore that is seeking to "create an enormous loophole." *Wilson,* 443 F.3d  at 376.

ECF 129-1 at 13, 16 asserts that the FDCPA objective standard in the Second Circuit is that of a "reasonable consumer."  The Second Circuit's "objective" standard is not the "reasonable debtor" standard. The standard used to determine whether something is deceptive or misleading is whether the "least sophisticated consumer" could have been deceived or misled. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).

ECF No. 129-1 at 16 claims that the admittedly "legally required" (because it was an effort to collect a debt) validation notice disclosing Mr. Williams' FDCPA "rights" had been sent by a prior collector. Rushmore apparently is unaware that *each* collector must send the §1692g validation notice. Hernandez v. Williams, Zinman & Parham PC, 829 F.3d 1068, 1079 (9th Cir. 2016) ("Congress's intent to require each debt collector to send a validation notice with its initial communication is clear from the statutory text"). Rushmore had its counsel send the "required" notice in violation of the FDCPA's prohibition on direct communication with a represented debtor, as set forth in ECF No. 56-1 at 8-9 and ECF No. 70 at 7.

ECF 129-1 at 17 claims that Mr. Williams agreed, in a contract of adhesion, that Rushmore could continue to report a delinquency. But Mr. Williams did not agree that Rushmore could inaccurately report that a balance was due when it was not.  In any

event, Mr. Williams could not waive his rights under the Fair Credit Reporting Act. Syed v. M-I, LLC, --- F.3d ----, 2017 WL 242559, at *4 (9th Cir. Jan. 20, 2017).

ECF 129-1 at 20 correctly admits that monthly statements need not be sent once the debt is discharged (but only need be sent "with respect to any portion of the mortgage debt that is not discharged."). See 12 CFR 1026.41: "(5) Consumers in bankruptcy. A servicer is exempt from the requirements of this section for a mortgage loan while the consumer is a debtor in bankruptcy under Title 11 of the United States Code."

Kowalski v. Seterus, Inc., 2017 WL 79949 (D. Me. Jan. 9, 2017), agreed that monthly statements are superfluous: "Regulation Z of TILA only applies if Mr. Kowalski is an obligor and at the time of the account statements, he was not an obligor. Thus, Seterus was not required to send the periodic statements and cannot rely on the exemption as justification for his direct communications with Mr. Kowalski." Id., at *14.

Indeed, Kowalski is instructive here with regard to Rushmore's persistent periodic statements:

> [T]he communications in this case went beyond these limits and were not merely invitations to redeem. As Mr. Kowalski points out, the "Account Statements" include an "Amount Due" with a payment coupon. They include language such as "Payment Due Date," "You are late on your mortgage payments," "DELINQUENCY NOTICE," and "Payment Outstanding." It is reasonable for a consumer like Mr. Kowalski to believe, based on the language contained in these statements, that he owed payments when, in fact, he owed nothing on the loan.

Id., at *15.

So, the only possible purpose of sending the gratuitous monthly statements was to collect a debt. Realizing that the statements need not be sent, Rushmore stopped sending the monthly statements at the end of 2015, once Mr. Williams realized that Rushmore was illegally adding its own FDCPA defense fees to the mortgage, which is a claim asserted in Williams II (Williams v Rushmore & Hunt Leibert, Civ. No. 3:16cv517

(RNC) (DFM)). Since Rushmore stopped sending the statements, it is fully aware that they were superfluous, and therefore nothing more than an effort to collect.

ECF No. 129-1 at 18-19 claims that Mr. Williams' counsel first disputed the account to Rushmore's counsel in January 2015, so that Rushmore did not have to credit-report the account as disputed before then. But the Complaint, ECF No. 1 ¶ 16, claims a false report "that plaintiff owed a significant balance on his mortgage, that monthly payments were due, and that a foreclosure proceeding had started." Since at all times Rushmore knew that none of this was true, and that Mr. Williams had discharged the debt in bankruptcy, it obviously had every reason to know that the debt was disputed.[12] "This 'knows or should know' standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is acquired." Brady v. Credit Recovery Co., 160 F.3d 64, 67 (1st Cir. 1998); Miceli v. Dyck-O'Neal, Inc., 2016 WL 7666167, *4 (M.D. Fla. Aug. 9, 2016) (allegations that collector knew there was no deficiency could support claim under §1692e(8) for reporting a deficiency without reporting that it was disputed).

B. Rushmore also cites inapposite cases and cases for propositions for which they do not stand, and uses quotes taken out of context. Examples abound on ECF No. 129-1 at 14. Rushmore cites Roth, which concerned only a financial packet, not a persistent years-long effort to elicit payment arrangements. In Roth, the consumer abandoned any FDCPA claim based on the packet, so the FDCPA was not at issue. Roth v. CitiMortgage

---

[12] 15 U.S.C. §1692e(8) prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Here, Rushmore knew the debt was disputed from its own knowledge, and specifically since  receiving a dispute notice dated July 13, 2013. ECF. No. 126-3 at 16.

Inc., 2013 WL 5205775, at *10 (E.D.N.Y. Sept. 11, 2013). Most important, Rushmore

omitted the Second Circuit affirmance, holding that Citi was not a debt collector anyway,

because only a mortgage servicer that acquires after default (as Rushmore did here) is a

debt collector. 756 F.3d 178 (2d Cir. 2014). Roth favors Mr. Williams.

Next, Rushmore cites Whalen as to dismissal of a Feb. 19 letter, without

disclosing that the court held that a March 13 letter from the mortgage servicer *did*

violate the FDCPA. Pertinent here, the Whalen court soundly rejected the mortgage

servicer's bankruptcy disclaimer:

> However, nothing in the disclaimer undermines the previous statements in the
> letter that foreclosure may be imminent if plaintiff does not enter into a payment
> plan with defendant. In other words, defendant's representation in the disclaimer
> that the letter was not a demand for payment means little when at the same time
> defendant was telling plaintiff that she risked foreclosure if she did not pay up.
> Under those circumstances, the disclaimer did not necessarily detract from an
> interpretation that the letter was an attempt to induce plaintiff to make a payment.
> In re Lemieux, 520 B.R. 361, 367 (Bankr.D.Mass.2014) (bankruptcy disclaimer
> not dispositive when "the balance of the [letter] sends a message that is at odds
> with the disclaimer").

Whalen v. Specialized Loan Servicing, LLC, 155 F. Supp. 3d 905, 911–12 (W.D. Wis.

2016).

Next on p. 14, Rushmore cites another nonbinding out-of-district decision,

Lovegrove, again without citing the appellate ruling. "Here, the [few] communications

were for informational purposes only, were non-threatening in nature, and contained clear

and unequivocal disclaimers to establish that they were not in connection with the

collection of a debt under Lovegrove's circumstances." Lovegrove v. Ocwen Home

Loans Servicing, L.L.C., --- Fed.Appx. ----, 2016 WL 7378098, at *3 (4th Cir. Dec. 20,

2016). Unlike the lengthy campaign in this case, the Lovegrove communications (only

two letters and an account statement) were "informational and non-threatening in nature"

and included "clear and unequivocal" bankruptcy disclaimers." <u>Lovegrove</u> conceded

there was no "bright line rule" as to whether a communication is an effort to collect a

debt. <u>Id.</u>, at *2. It found that the minimal documents did not constitute an effort to collect

a debt, applying the "reasonable consumer" standard, not the Second Circuit's "least

sophisticated consumer" standard.  <u>Lovegrove's</u> result is directly contrary to the Second

Circuit's holding in <u>Hart v. FCI Lender Servs., Inc.</u>, 797 F.3d 219 (2d Cir. 2015),

discussed supra at 3-5.

Next on p. 14, Rushmore cites <u>Bailey v. Sec. Nat. Servicing Corp.</u>, 154 F.3d 384,

388–89 (7th Cir. 1998). Not only did the single letter at issue in *Bailey* not demand

payment, it did not refer to any debt that was delinquent in status (the delinquent debt

having been displaced by a renegotiated forbearance agreement). Yet again, the cite is

inapposite to the facts of this case.

Then Rushmore cites <u>Gillespie v. Chase Home Fin., LLC</u>, 2009 WL 4061428

(N.D. Ind. Nov. 20, 2009), which needs no further discussion since Rushmore's own

description of its holding makes it clear that the case is unlike the aggressive collection

tactics at issue here.

Last on p. 14 is <u>Mabbitt v. Midwestern Audit Serv., Inc.</u>,  2008 WL 723507,(E.D.

Mich. Mar. 17, 2008), which held that one of the two letters at issue was not an effort to

collect a debt, but the other one was. "The December 18 letter contains language

mandated by the FDCPA that makes it clear that the sender is attempting to collect a

debt. The December 29 letter, in contrast, simply informs Ms. Perry that a previous

balance for which she was responsible has been transferred to her current account." <u>Id.</u>, at

*4.

The sampling of cases cited by Rushmore on p.14 should alert the Court to be wary of Rushmore's other citations. Here is another random example. At p. 10, Rushmore cites the lower court decision in <u>Boyd v. J.E. Robert Co.</u>, 765 F.3d 123 (2d Cir. 2014), for the proposition that the FDCPA makes a distinction between collecting and enforcing security interests. But the actual holding was that municipal water and sewage liens are outside the scope of the FDCPA, just as tax liens are. <u>Id.</u> at 126.

<div align="center">CONCLUSION</div>

<u>Plaintiff requests summary judgment in his favor</u> on the two issues raised by Rushmore: the claim that Rushmore was not engaged in debt collection, and the untenable claim that Mr. Williams has no standing. The Court can enter summary judgment for the nonmoving party as to the issues raised by the moving party. *Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of Am.*, 419 F.3d 181, 190-191 (2d Cir. 2005). *See also New England Health Care Employees Union v. Mt. Sinai Hosp.*, 65 F.3d 1024, 1029 (2d Cir. 1995) (summary judgment may enter for nonmoving party); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (same).

Plaintiff requests the Court to deny defendant's motion and to not consider any new arguments defendant may assert in violation of L. Civ. Rule 7(d). <u>Cuba-Diaz v. Town of Windham</u>, 274 F. Supp. 2d 221, 230 (D. Conn. 2003); <u>Corpes v. Walsh Constr. Co.</u>, 130 F. Supp. 3d 638, 644 (D. Conn. 2015). Pursuant to D. Conn. L. Civ. R. 7(d): reply briefs "must be strictly confined to a discussion of matters raised by the responsive brief and must contain references to the pages of the responsive brief to which reply is being made."

THE PLAINTIFF

BY_____

JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395



**PAYOFF STATEMENT**

P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

September 15, 2015

Nikil Ranshoor
Rlms

Loan No:  7600014272
Loan Type:  Conventional
Noteholder: Gmat Lgl Title Tr 2013-1

RE:
Matthew D Williams
Lisa A Williams
226 Scotland Rd
Madison CT 06443

Property Address:
226 Scotland Road
Madison CT 06443

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
These figures are good to October 21, 2015.
This loan is due for the December 01, 2009 payment.

| | | |
|---|---|---:|
| The current total unpaid Principal Balance is: | $ | 382,209.06 |
| Interest at  6.25000% | | 134,583.46 |
| Escrow/Impound Overdraft | | 48,311.97 |
| Suspense Balance | | -1,733.32 |
| Unpaid Late Charges | | 2,525.34 |
| Recoverable Corporate Advances | | 3,561.94 |
| Recon/Recording Fee | | 63.00 |
| Property Inspection | | 23.00 |
| \* \* \* \* TOTAL AMOUNT TO PAY LOAN IN FULL \* \* \* \* \* | $ | 569,544.45 |
| 2nd Principal Balance | | .00 |
| Deferred Interest Balance | | .00 |

The total unpaid Principal Balance includes the 2nd Principal Balance,
Deferred Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount.

If the loan is less than 30 days past due the Principal Reduction Amount i
deducted from the total amount due.

Funds received on or after October 21, 2015 will require an additional
$ 44.50 interest per Day.

Payoff funds being sent by mail must be directed to:

Rushmore Loan Management Services LLC
        Attn: Payoff Department
        15480 Laguna Canyon Road Suite 100
        Irvine, CA 92618

NMLS ID: 185729    

**Defendant / CC Plaintiff Production 1467**



P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

**PAYOFF STATEMENT**

August 02, 2016

Crystal Baxter
Rlms

Loan No:  7600014272
Loan Type:  Conventional
Noteholder: Gmat Lgl Title Tr 2013-1

RE:                                    Property Address:
Matthew D Williams                     226 Scotland Road
Lisa A Williams                        Madison CT 06443
15480 Laguna Canyon Roa
Irvine CA 92618

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
These figures are good to August 31, 2016.
This loan is due for the December 01, 2009 payment.
The current total unpaid Principal Balance is:         $       382,209.06
Interest at  6.25000%                                          146,976.92
Escrow/Impound Overdraft                                        51,459.17
Suspense Balance                                               -1,733.32
Unpaid Late Charges                                             3,667.95
Recoverable Corporate Advances                                 25,668.99
Recon/Recording Fee                                                76.00
Property Inspection                                                16.50
Short Interest                                                       .00
 \* \* \* \* TOTAL AMOUNT TO PAY LOAN IN FULL \* \* \* \* \* $       608,341.27

2nd Principal Balance                                               .00
Deferred Interest Balance                                           .00

The total unpaid Principal Balance includes the 2nd Principal Balance,
Deferred Interest Balance, Principal Reduction Amount (HAMP incentive)
and/or a Forbearance Amount.



EQUAL HOUSING
LENDER



P.O Box 55004
Irvine, CA  92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

If the loan is less than 30 days past due the Principal Reduction Amount
is deducted from the total amount due.

Funds received on or after August 31, 2016 will require an additional
$ 34.03 interest per Day.

Payoff funds being sent by mail must be directed to:

        Rushmore Loan Management Services LLC
              Attn: Payoff Department
              15480 Laguna Canyon Road Suite 100
              Irvine, CA 92618

These figures are subject to final verification by the Noteholder.
Figures may be adjusted if any check/money order previously received is
rejected by the institution upon which it was drawn.


Issuance of this statement does not suspend the contract requirement to
make the mortgage payments when due.  A late charge of $ 122.57 will be
assessed 16 days after a current payment is due and should be added
to the payoff total if received after that time.  All past due amounts
are included in the above figures.

If this property is sold, please provide the seller's forwarding address.

PAYOFF DEPARTMENT

XP011-071/MC4





P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2200 fax
www.rushmorelm.com

## RUSHMORE LOAN MANAGEMENT SERVICES LLC

## WIRING INSTRUCTIONS

Please wire funds to:

| | |
|---|---|
| Institution: | Wells Fargo |
| ABA Routing Number: | Bank 121000248 |
| Account Number: | 4122029028 |
| Reference: | Loan Number |
| | Borrower Name |

| | |
|---|---|
| Attn: | Cashiering Department |
| Beneficiary: | Rushmore Loan Management LLC |
| | 15480 Laguna Canyon Road |
| | Suite 100 |
| | Irvine, CA 92618 |

| | |
|---|---|
| Customer Service: | 888-504-6700 |




1700 G Street NW, Washington, DC 20552

June 3, 2016

**VIA CM/ECF**

Marcia M. Waldron
Clerk
U.S. Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Re:  ***Bock v. Pressler & Pressler, LLP*, No. 15-1056**

Dear Ms. Waldron:

The Consumer Financial Protection Bureau (CFPB or Bureau) respectfully submits this supplemental *amicus* brief in response to the Court's order of May 20, 2016, which requested that the parties file supplemental letter briefs addressing the applicability of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to this case, including the question whether Bock has established concrete harm sufficient to give him standing or whether he has established only a bare procedural violation.  For the reasons set forth below, the Bureau urges the Court to conclude that Bock has suffered a concrete harm sufficient to establish Article III standing.

**I.  Interest of the Bureau**

The Bureau has a substantial interest in plaintiffs' standing under Article III to bring suit in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act).  Although the Bureau and various other federal agencies have authority to enforce the Act, 15 U.S.C. § 1692*l*, Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977).  An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement

to the Bureau's own enforcement efforts. The Bureau therefore has a substantial interest in the standing issue presented in this case.

## II. Bock Has Article III Standing.

1. In *Spokeo*, the Supreme Court reaffirmed the well-established principle that a plaintiff invoking the jurisdiction of an Article III court must establish "injury in fact." *Spokeo*, Slip op. at 6. In particular, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *Spokeo* also reaffirms the longstanding principle that the required "legally protected interest" may be an interest that Congress has granted legal protection by creating a statutory right. *See id.* at 9 (reaffirming that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'" (quoting *Lujan*, 504 U.S. at 578) (alteration omitted)); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (quotations omitted)). Nonetheless, the invasion of such a statutory right will not "automatically" satisfy the "injury-in-fact requirement"; the fact that Congress "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" is not necessarily enough. *Spokeo*, Slip op. at 9. For example, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 9-10. Rather, the invasion of a statutory right must itself be "concrete and particularized" and "actual or imminent." *Id.* at 7.

A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," *id.* at 7 (quotations omitted), while a "concrete" injury is one that is "*de facto*," *id.* at 8. That is, to be "concrete," the injury must "actually exist"; it must be "real," not "abstract." *Id.* A concrete injury need not be tangible, however. *Id.* at 8-9. An intangible injury can also be concrete. *Id.* at 9. In assessing whether an intangible injury is sufficiently "concrete," the Court recognized that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and, thus, that "its judgment is . . . instructive and important." *Id.*

2. Bock has alleged, and the district court found based on the undisputed facts, that Pressler & Pressler violated the FDCPA by misrepresenting that an attorney was meaningfully involved in the debt-collection suit that the firm filed against him. Appx. 30. Bock has therefore suffered the "invasion of a legally protected interest." The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means" to collect a debt, 15 U.S.C. § 1692e, and it authorizes a consumer to recover actual and statutory damages from "any debt

collector who fails to comply with" that provision "with respect to" the consumer, *id.*
§ 1692k(a). Together, these provisions grant consumers like Bock a legally protected
interest in not being subjected to misleading debt-collection communications—an
interest that Pressler & Pressler invaded.

There is no serious question that the invasion of this interest is both actual and
particularized: The events described in the record demonstrate "actual" injury
because the invasion of Bock's legally protected interest in fact occurred. And that
invasion "affect[ed] [Bock] in a personal and individual way," *Spokeo*, Slip op. at 7,
because Pressler & Pressler misrepresented *to Bock* that an attorney had been
meaningfully involved in the lawsuit filed *against him.* The injury that Bock suffered is
personal to him and is not a "nonjusticiable generalized grievance." *See id.* at 8 n.7.

3. The misrepresentation directed at Bock also constitutes a "concrete" injury.
In *Havens Realty Corp. v. Coleman*, the Supreme Court held that the deprivation of a
right not to be "the object of a misrepresentation made unlawful under" the Fair
Housing Act (FHA) satisfied Article III's "injury in fact" requirement. 455 U.S. 363,
373-74 (1982). In that case, a housing-discrimination "tester"—*i.e.*, a person who,
"without an intent to rent or purchase a home or apartment, pose[d] as [a] renter[] or
purchaser[] for the purpose of collecting evidence of unlawful steering practices"—
brought suit against a realty company that had falsely informed her that no housing
was available. *Id.* at 373-74. The FHA barred misrepresentations about available
housing, thus creating a "legal right to truthful information about available housing."
*Id.* at 373 (citing 42 U.S.C. § 3604(d)). The Court concluded that "the Art. III
requirement of injury in fact is satisfied" because the tester "allege[d] injury to her
statutorily created right to truthful housing information." *Id.* at 374.

*Havens Realty* remains good law. *Spokeo* did not mention—much less limit—
*Havens Realty*'s holding that a violation of a statutory right not to be the target of a
misrepresentation satisfies "the Art. III requirement of injury in fact," *Havens Realty*,
455 U.S. at 374. *See also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18
(2000) ("This Court does not normally overturn, or so dramatically limit, earlier
authority *sub silentio.*"). On the contrary, *Spokeo* confirms that "Congress may 'elevate
to the status of legally cognizable injuries concrete, *de facto* injuries that were previously
inadequate in law.'" *Spokeo*, Slip op. at 9 (quoting *Lujan*, 504 U.S. at 578) (alteration
omitted).

As applied to this case, *Havens Realty* compels the conclusion that a person who
has been subjected to a misrepresentation made unlawful by 15 U.S.C. § 1692e suffers
a concrete injury that satisfies Article III. Just as the statute in *Havens Realty* created a
"legal right to truthful information about available housing," *Havens Realty*, 455 U.S. at
373, the FDCPA grants consumers a legal right to truthful information in their

dealings with debt collectors. *Havens Realty* teaches that the invasion of such a right—a right not to be "the object of a misrepresentation made unlawful under [the statute]," *id.*—suffices to support standing. And just like the invasion of that right sufficed to support standing in *Havens Realty*, so too does the invasion of the analogous right here support Bock's standing to sue.

Congress's judgment further confirms that the deprivation of Bock's right not to be subject to misrepresentations constitutes concrete harm. As the Court in *Spokeo* acknowledged, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and its judgment about what harms meet those requirements is accordingly "instructive and important." Slip op. at 9. Here, Congress enacted the FDCPA to ensure that "every individual, whether or not he owes the debt," would have the "right to be treated in a reasonable and civil manner." 123 Cong. Rec. 10241 (Apr. 4, 1977) (statement of Rep. Annunzio). To that end, the Act gives consumers various rights to be treated appropriately, including the right not to be subjected to "any false, deceptive, or misleading representation or means" in the debt-collection process. 15 U.S.C. § 1692e. This is one of the various ways in which Congress protected consumers from the "abuse by third party debt collectors" that Congress found to be "a widespread and serious national problem." S. Rep. No. 95-382, at 2 (1977). As in *Havens Realty*, "[t]his congressional intention cannot be overlooked in determining whether [Bock has] standing to sue." 455 U.S. at 373.

Moreover, under *Havens Realty*, Bock's injury is "concrete" even if he has not alleged that the misrepresentation caused additional consequential harm. No such harm was alleged in *Havens Realty*. Rather, the Supreme Court upheld the tester's Article III standing even though she "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home." *Havens Realty*, 455 U.S. at 374. In this case, the Bureau's prior *amicus* brief explained how consumers generally may be affected by misrepresentations of attorney involvement. CFPB/FTC Amicus Br. 21-22 (Aug. 13, 2015). But that does not mean that an FDCPA plaintiff must allege or prove that the misrepresentation had consequential effects in his particular circumstances. As *Spokeo* recognized, "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure," Slip op. at 10, and "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before," *id.* at 9 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). As in *Havens Realty*, Pressler & Pressler's deprivation of Bock's statutory right not to be subject to misrepresentations in the context of debt collection is sufficiently concrete by itself to confer Article III standing on Bock.

Finally, this Court's order requested briefing on whether Bock had "established only a bare procedural violation" under *Spokeo*, which states that "a bare procedural violation, divorced from any concrete harm," does not satisfy Article III's injury-in-fact requirement. *Id.* at 9-10 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). The statutory right to be free from misleading debt-collection practices—part of the overarching "right to be treated in a reasonable and civil manner," 123 Cong. Rec. 10241—is not a *procedural* right for which a separate "concrete harm" must be identified. Rather, as in *Havens Realty*, an infringement of that right is itself a "specific injury" that satisfies "the Art. III requirement of injury in fact." 455 U.S. at 374.

## III. Conclusion

For these reasons, the Court should hold that Bock has Article III standing to pursue his FDCPA claims.

<div style="margin-left:40%;">

Sincerely,

/s/ Kristin Bateman

Mary McLeod
    *General Counsel*
John R. Coleman
    *Assistant General Counsel*
Nandan M. Joshi
Kristin Bateman
    *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7821 (telephone)
(202) 435-7024 (facsimile)
kristin.bateman@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*

</div>

Certificate of Service

I hereby certify that on February 10, 2017, a copy of within was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Joanne S. Faulkner___

JOANNE S. FAULKNER ct04137

29