UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW D. WILLIAMS,           :
                               :
     Plaintiff,                :
                               :
v.                             :     Case No. 3:15-cv-673 (RNC)
                               :
RUSHMORE LOAN MANAGEMENT       :
SERVICES, LLC,                 :
                               :
     Defendant.                :

RULING AND ORDER

Plaintiff Matthew D. Williams brings this action under the
Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et
seq., against defendant Rushmore Loan Management Services, LLC.[1]
Pending are Williams's motion for reconsideration of a ruling
denying a motion for partial summary judgment that was previously
briefed and argued (ECF No. 144) and Rushmore's motion for
summary judgment (ECF No. 129).  For reasons that follow,
Williams's motion for reconsideration is denied and Rushmore's
motion for summary judgment is granted in part and denied in
part.[2]

_____

[1] This is the first of four lawsuits Williams has brought
related to Rushmore's servicing of his mortgage loan. See
Williams v. Rushmore Loan Mgmt. Servs., LLC, 3:16-cv-517 (RNC);
Williams v. Rushmore Loan Mgmt. Servs., LLC, 3:17-cv-538 (RNC);
Williams v. GMAT Legal Title Trust 2013-1, 3:17-cv-1814 (RNC).

[2] Also pending is Rushmore's motion to correct and supplement
an affidavit it filed in support of its motion for summary
judgment (ECF No. 148).  The originally-filed affidavit
incorrectly stated the date Rushmore hired foreclosure counsel.
Williams takes "no position on the motion," but nonetheless

1

I. Background

The record shows the following. In 2008, Williams and his former spouse obtained a loan secured by a mortgage on their home in Madison, Connecticut.[3] By 2009, they were in default and facing foreclosure proceedings. In 2010, Williams obtained a bankruptcy discharge, freeing him from any personal liability on the loan. See In re Williams, 10-BR-31257 (Bankr. D. Conn., Aug. 3, 2010) (ECF No. 28). Though he did not resume making mortgage payments, the foreclosure action remained dormant. In May 2013, the action was dismissed for failure to prosecute. See BAC Home Loans v. Williams, NNH-CV-10-6006965-S (Sup. Ct. New Haven).

In June 2013, Rushmore became the servicing agent for the mortgage and on June 28, 2013, it sent a letter to Williams. The letter provided a "Summary of Total Debt Composition," the "Current Monthly Payment Amount," and the "Payment Due Date." The letter stated:

> Please call Rushmore Loan Management
> Services LLC at 1-888-504-6700 for a current
> payoff at the time of any payment.

asserts that the affidavit is inadmissible hearsay and that an attached letter corroborating the affidavit is subject to exclusion under the rule of completeness (ECF No. 149). In the absence of objection, the motion to supplement is granted. Williams has not explained why the affidavit is hearsay or why another writing "in fairness ought to be considered at the same time." Fed. R. Evid. 106.

[3] The mortgage was assigned to multiple entities between 2009 and 2014. Since February 2014, it has been assigned to GMAT Legal Title Trust 2013-1 ("GMAT").

> Pursuant to the Federal Fair Debt
> Collections Practices Act, if you do not
> notify us within 30 days after receiving
> this notice that you dispute the validity of
> this debt or any portion thereof, we will
> assume the debt is valid. . . .
>
> You should consider this letter as coming
> from a Debt Collector as we sometimes act as
> a Debt Collector and any information
> received will be used for that purpose.
> However, if you are in Bankruptcy or
> received a Bankruptcy Discharge of this
> debt, this letter is not an attempt to
> collect a debt and does not constitute a
> notice of personal liability with respect to
> that debt.

On July 2, 2013, Williams discussed his options regarding the loan with Rushmore representative John Torres. He expressed an interest in obtaining a loan modification and resuming payments to keep his home. Torres subsequently sent him a loss mitigation assistance package. On July 22, 2013, he submitted documents to Rushmore to apply for loss mitigation assistance.

Included among the documents was a Third Party Authorization Request Form, which authorized Rushmore to discuss Williams's mortgage loan and "negotiate terms of a workout agreement" with his attorney, Bradford Sullivan. Plaintiff's affidavit states that, "[b]ecause I was interested in making arrangements to keep my home, I did not, either orally or in writing, ask Rushmore to stop contacting me. I requested and expected that Rushmore would deal with me through my lawyer." Throughout August and September 2013, Williams provided additional documents in support of his

loss mitigation application, which Torres had requested by
telephone.

On October 17, 2013, Rushmore sent Williams a letter
confirming that he was approved for a Short Term Forbearance
Agreement ("the Agreement").  The letter described how and when
he should make the initial payment.  Like the letter quoted
above, it also provided a debt collection notice ("Rushmore . . .
is attempting to collect a debt.") and bankruptcy disclaimer
("[I]f you . . . have been previously discharged from a
bankruptcy, please be advised that this letter does not in any
way mean that Rushmore . . . is attempting to hold you personally
liable for the loan.").

Williams executed the Agreement on October 28, 2013.  Under
the terms of the Agreement, Rushmore agreed not to foreclose on
the property so long as Williams made certain specified payments
from October 2013 to February 2014.  If Williams fully complied,
Rushmore agreed to conduct another review of the loan for a
"final Loss Mitigation alternative which may fully cure the loan
default."  The Agreement also stated the following:

> If Borrower(s) . . . received a discharge
> from the Bankruptcy Court of his/her/their
> personal liability under the Note, Lender
> agrees and Borrower(s) acknowledge as
> follows: (i) Lender will not pursue
> collection of any discharged obligation from
> Borrower(s) personally, (ii) this Agreement
> is not intended as a demand for payment,
> (iii) unless the Bankruptcy Court has ordered
> otherwise, Lender continues to retain

4

> whatever rights Lender holds in the Property,
> despite Borrower(s)' bankruptcy filing . . .

Williams made the agreed-upon payments, and on March 24, 2014, Rushmore sent him a proposed final loan modification agreement.  The cover letter included a debt collection notice and bankruptcy disclaimer.  Between April and July 2014, Williams expressed dissatisfaction with the payment terms under the proposed agreement and asked that they be changed.  Rushmore requested additional information verbally and by letter, and Williams sent Rushmore a second loss mitigation application. Each letter sent by Rushmore included a debt collection notice and bankruptcy disclaimer.[4]  Around this time, Williams submitted additional Third Party Authorization Request Forms naming attorneys Brian E. Kaligan and Michael J. Sweeney.

On August 1, 2014, Rushmore sent Williams a letter denying his request for a loan modification under the terms he requested. Again, the letter included a debt collection notice and bankruptcy disclaimer.  Between August and September 2014, Williams disputed the accuracy of an appraisal used by Rushmore to calculate his proposed payments under the loan modification

---

[4] The notice and disclaimer in these letters stated: "This is an attempt to collect a debt and any information obtained will be used for that purpose. Rushmore is acting as a 'debt collector' as that term is defined in the federal fair debt collection practices act. This notice is required by the Federal Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States."

plan and submitted additional income documentation. Williams appealed Rushmore's decision denying his request. On October 1, 2014, Rushmore sent Williams a letter denying his appeal. This letter also included a debt collection notice and bankruptcy disclaimer.

According to Williams, he spoke to Torres on October 1, 2014, and "specifically told . . . Torres[] that [his] attorney would get back to him." Instead of waiting for Williams's attorney to respond, Torres called Williams on October 8, 2014, and engaged him in a lengthy conversation. After that phone call, Williams responded to all of Rushmore's calls by stating, "speak to my attorney." Nonetheless, Torres called him directly on October 16, 2014, and twice on February 20, 2015. Another Rushmore representative called him directly on October 24, 2014.

According to Williams, during the October 8 phone call, Torres told him that Rushmore's attorneys, Hunt Leibert Jacobson, P.C. ("Hunt"),[5] would enter a "foreclosure judgment" on November 6, 2014. However, foreclosure proceedings did not commence until June 2016. A judgment of strict foreclosure entered on September 11, 2017. See GMAT Legal Title Trust 2013-1 v. Williams, NNH-CV16-6063079-S (Sup. Ct. New Haven).[6]

---

[5] Hunt has since been succeeded by merger by McCalla Raymer Leibert Pierce LLC.

[6] The complaint alleges that Rushmore represented to Williams or his attorney that foreclosure was "pending" or

On December 29, 2014, Hunt sent Williams a letter stating that it had been retained to represent GMAT in connection with the mortgage loan. The letter stated that Hunt was aware Williams had received a discharge in bankruptcy and, consequently, Hunt was not attempting to collect the balance of the loan. Instead, the letter was meant to provide "notification of rights you have under federal law." The letter referred to the signing attorney as a "Debt Collector" and included a debt collection notice and bankruptcy disclaimer similar to Rushmore's letters described above. The letter did not mention Rushmore.

On February 20, 2015, Rushmore sent Williams a letter stating: "It is . . . our understanding that you have a strong desire to settle this debt with Rushmore, however the real property that secures your loan, may not sell for an adequate amount to pay off your loan in full. For this reason, you have asked if we would consider accepting an amount less than the total debt due through the sale of the property." The letter asked Williams to provide information related to the request. The letter did not include a debt collection notice or bankruptcy disclaimer. The record does not show whether Williams responded to the letter. Williams filed this suit on May 6, 2015.

Throughout the time Rushmore serviced Williams's mortgage

---

"imminent" on several other occasions in late 2014 and early 2015.

loan, it sent him monthly mortgage statements. The statements
included the "Amount Due," due dates, and instructions for making
payment. Each statement included a debt collection notice and
bankruptcy disclaimer. In addition, each month from December
2013 to December 2014, Rushmore reported to Experian, a national
credit bureau, that Williams was in default and the property was
in foreclosure. The reports to Experian did not indicate that
the debt was disputed.

## II. Legal Standard

Summary judgment may be granted when there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S.
317, 322 (1986). To avoid summary judgment, the non-moving party
must point to evidence that would permit a jury to return a
verdict in his or her favor. Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 252 (1986). In determining whether this standard
is met, the evidence must be viewed in the light most favorable
to the non-moving party. Id. at 255.

## III. Discussion

Williams asserts four claims under the FDCPA. He claims
that Rushmore: (1) communicated with him without his consent
after Rushmore knew he had retained a lawyer, in violation of §
1692c(a)(2); (2) communicated false information to a credit
bureau, in violation of § 1692e(8); (3) attempted to collect

charges that were not due, in violation of § 1692f(1); and (4) falsely stated that foreclosure was imminent on a date certain, in violation of § 1692e(2)(A). Rushmore moves for summary judgment on all four claims. Before addressing Rushmore's motion, I address Williams's motion for reconsideration.

### A. Plaintiff's Motion for Reconsideration

The motion for reconsideration concerns Williams's claim that Rushmore violated 15 U.S.C. § 1692c(a)(2) by communicating directly with Williams without his consent after it knew he had a lawyer. In previously moving for partial summary judgment as to Rushmore's liability on this claim, Williams asked the Court to find that the record established a violation of the statute as a matter of law. See Pl.'s Motion (ECF No. 56). The Court denied the motion stating, "genuine issues of material fact are presented with regard to whether the plaintiff consented to have the defendant communicate directly with him." Order of May 30, 2017 (ECF No. 140).

The standard for granting a motion for reconsideration is "strict." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. A motion for reconsideration "cannot be employed

as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency of the underlying motion." Palmer v. Sena, 474 F. Supp. 2d 353, 355 (D. Conn. 2007). Such a motion "should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader, 70 F.3d at 257.

Plaintiff's motion for reconsideration is not supported by reference to controlling decisions or data that were overlooked and could be expected to alter the previous ruling. Because the motion does not satisfy the strict standard for granting reconsideration, it is denied.

B. *Defendant's Motion for Summary Judgment*

Rushmore moves for summary judgment on all claims, arguing that Williams lacks Article III standing to bring a claim. In addition, Rushmore argues that all the claims fail as a matter of law because the alleged communications were not "in connection with the collection of any debt" within the meaning of the FDCPA. For reasons stated below, I conclude that Williams has standing. I also conclude that his claims are adequately supported to survive summary judgment with the exception of the claim under § 1692(f)(1).

i. Standing

Under Article III of the Constitution, the judicial power of the United States "extends only to 'Cases' and 'Controversies.'"

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  "To
satisfy the 'irreducible constitutional minimum' of Article III
standing, a plaintiff must demonstrate (1) 'injury in fact,' (2)
a 'causal connection' between that injury and the complained-of
conduct, and (3) a likelihood 'that the injury will be redressed
by a favorable decision.'" Strubel v. Comenity Bank, 842 F.3d
181, 187-88 (2d Cir. 2016) (quoting Lujan v. Defs. of Wildlife,
504 U.S. 555, 560-61 (1992)).

      Rushmore argues that Williams has failed to demonstrate
injury in fact.  "To demonstrate injury in fact, a plaintiff must
show the 'invasion of a legally protected interest' that is
'concrete and particularized' and 'actual or imminent, not
conjectural or hypothetical.'"  Id. (quoting Lujan, 504 U.S. at
560).  Williams has not alleged a concrete injury, Rushmore
argues, because his allegations amount to "mere technical
violations of a statute" that are divorced from the "annoyance,
anxiety, inconvenience and damage to credit reputation" that he
claims as damages.

      Though a "bare procedural violation" is insufficient to
confer standing, neither a tangible injury nor actual damages are
required.  See id. at 188-89 (discussing Spokeo, 136 S. Ct. at
1549).  Rather, "an alleged procedural violation can by itself
manifest concrete injury where Congress conferred the procedural
right to protect a plaintiff's concrete interests and where the

procedural violation presents a 'risk of real harm' to that concrete interest." Id. at 190 (quoting Spokeo, 136 S. Ct. at 1549). In such a situation, there is no "need [to] allege any *additional* harm beyond the one Congress has identified." Spokeo, 136 S. Ct. at 1549 (emphasis in original). Moreover, "where a plaintiff sues to enforce a *substantive* legal right conferred by statute, she has standing to pursue that claim without need to allege a 'material risk of harm' because the infringement of that right constitutes, in and of itself, a concrete injury." Bautz v. ARS Nat'l Servs., Inc., 226 F. Supp. 3d 131, 141 (E.D.N.Y. 2016) (emphasis added) (citing Church v. Accretive Health, Inc., 654 F. App'x 990, 995 n.2 (11th Cir. 2016) (per curiam)); accord Garcia v. Law Offices Howard Lee Schiff P.C., No. 3:16-CV-00791 VAB, 2017 WL 1230847, at *3 (D. Conn. Mar. 30, 2017).

To determine whether a plaintiff has standing based on the violation of a statute, courts engage in a claim-by-claim analysis. For example, in Strubel, 842 F.3d at 190-194, the Court of Appeals addressed four alleged violations of the Truth in Lending Act ("TILA") based on the defendant's failure to disclose certain information to the plaintiff. The Court found standing with respect to two of the alleged violations: (1) the defendant's failure to disclose a consumer's rights regarding disputed credit card purchases, and (2) its failure to disclose that a consumer must contact a bank in writing or electronically

if dissatisfied with a credit card purchase.  Id. at 190-91.

These disclosure requirements serve "to protect a consumer's

concrete interest in 'avoiding the uninformed use of credit,' a

core object of the TILA."  Id. at 190 (quoting 15 U.S.C. §

1601(a)).[7]

Here, all of plaintiff's claims arise under the FDCPA.  The

FDCPA was enacted "to eliminate abusive debt collection practices

by debt collectors, to insure that those debt collectors who

refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State

action to protect consumers against debt collection abuses." 15

U.S.C. § 1692.  In enacting the FDCPA, Congress found that

"[a]busive debt collection practices contribute to the number of

personal bankruptcies, to marital instability, to the loss of

jobs, and to invasions of individual privacy."  Id.

Williams alleges a concrete injury with respect to his

claims that Rushmore falsely stated that the property was in

_____

[7] Two other allegations involved "bare procedural
violations": the defendant's alleged failure to disclose (1) a
consumer's obligation to provide a creditor with timely notice to
stop automatic payment of a disputed charge and (2) its
obligation to acknowledge a reported billing error within 30 days
and state whether the error had been corrected.  Id. at 191-93.
With respect to these allegations, it was undisputed that (1) the
defendant bank did not offer an automatic payment at the time and
(2) the plaintiff had never reported a billing error. Id.
As a result, the alleged violations of these TILA provisions
risked no real harm to the plaintiff.

13

foreclosure and communicated false information to a credit
bureau, both "false, deceptive, or misleading representations"
under 15 U.S.C. § 1692e.  Most courts have found that § 1692e
confers a substantive right: "By enacting the FDCPA, Congress
permissibly created a right — the right to be free from false,
deceptive, or misleading practices by debt collectors — for which
a violation constitutes a particularized injury."  Remington v.
Fin. Recovery Servs., Inc., No. 3:16-CV-865 (JAM), 2017 WL
1014994, at *2 (D. Conn. Mar. 15, 2017).[8]

Even if § 1692e confers only procedural rights, Williams
alleges more than a "bare procedural violation."  Protecting
consumers from unfair debt collection practices, including false
or misleading statements made by debt collectors, is a "core
object of the [FDCPA]."  Bautz, 226 F. Supp. 3d at 149 (quoting
Strubel, 842 F.3d at 190).  The FDCPA is meant to protect
consumers from financial stress and invasions of privacy, and a
violation of § 1692e risks real harm to those interests.  See
Bautz, 226 F. Supp. 3d at 148-49; Sayles v. Advanced Recovery
Sys., Inc., 865 F.3d 246, 250 (5th Cir. 2017) (consumer had

---

[8] See also Guerrero v. GC Servs. Ltd. P'ship, No.
CV157449DRHAKT, 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017)
("[T]he majority of post-Spokeo decisions which have analyzed
standing within the context of the FDCPA have determined that,
unlike the FCRA section at issue in Spokeo, which contains only
procedural requirements, the FDCPA creates a substantive right,
the violation of which would itself give rise to a concrete
injury.") (collecting cases).

standing with respect to claim debt collector communicated false information to credit bureau based on "real risk of financial harm caused by an inaccurate credit rating").

Williams also alleges concrete injury with respect to his claims that Rushmore communicated with him directly without his consent despite knowing he was represented by an attorney, in violation of 15 U.S.C. § 1692c(a)(2), and included in communications charges that were not due, an "unfair practice" under 15 U.S.C. § 1692f(1). These statutory provisions, like the prohibition on false representations, directly protect consumers from abusive debt collection practices, the core object of the FDCPA. See McCamis v. Servis One, Inc., No. 8:16-CV-1130-T-30 AEP, 2016 WL 4063403, at *2 (M.D. Fla. July 29, 2016) ("Plaintiff has statutorily-created rights to be free from a debt collector's inappropriate attempts to collect a debt that he is no longer responsible for; to be free from being contacted from a debt collector who knows he is represented; and to be free from being subjected to false, deceptive, unfair, or unconscionable means to collect a debt."). Thus, an alleged violation of these provisions is sufficient to establish standing regardless of whether the rights conferred by the provisions are deemed substantive or procedural.

ii. "In Connection with the Collection of Any Debt"

15

Each of the alleged violations of the FDCPA requires a showing that Rushmore's actions were taken "in connection with the collection of any debt," <u>see</u> 15 U.S.C. §§ 1692c, 1692e, or "to collect or attempt to collect any debt," <u>id.</u> at § 1692f.[9] Whether a communication is sent in connection with the collection of a debt "is a question of fact to be determined by reference to an objective standard." <u>Hart v. FCI Lender Servs., Inc.</u>, 797 F.3d 219, 225 (2d Cir. 2015). Courts must ask whether "a consumer receiving the communication could reasonably interpret it as being sent 'in connection with the collection of a debt,' rather than inquir[e] into the sender's subjective purpose." <u>Id.</u>

In Hart the Court of Appeals concluded that "an *attempt* to collect a debt . . . qualifies as a communication 'in connection with the collection of any debt.'" Id. at 226. The Court stated that this conclusion "easily accords with the plain meaning of the broad statutory language, as well as with the Act's remedial purpose of halting abusive collection practices and giving debtors adequate information about their rights and obligations." Id.

In Hart, the communication at issue, entitled "Transfer of Servicing Letter," did not include an explicit demand for payment or even discuss the current status of the plaintiff's debt. Id.

---

[9] Rushmore appears to concede a second threshold requirement: that it is a "debt collector" under the FDCPA.

at 226.  Nonetheless, the Court found that the letter was sent in connection with the collection of a debt because: "(1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter 'emphatically announce[d] itself as an attempt at debt collection: THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.'"  Carlin v. Davidson Fink LLP, 852 F.3d 207, 215 (2d Cir. 2017) (discussing dispositive factors in Hart, 797 F.3d at 226).

a. Claims Under § 1692c(a)(2) and § 1692e(2)(A)

Rushmore contends that Williams's claims under § 1692c(a)(2), alleging direct contacts by Rushmore after it knew he had a lawyer,[10] and § 1692e(2)(A), alleging false statements by Rushmore that foreclosure was imminent,[11] fail as a matter of

---

[10] This claim is based on Williams's contention that by providing an authorization form to contact his attorney on July 22, 2013, and later "request[ing] that Rushmore . . . deal with [him] through [his] lawyer," Rushmore's direct telephonic and written communications with him thereafter were without his consent. When plaintiff first requested that Rushmore deal with him through his lawyer is not clear.  His affidavit states that on October 1, 2014, he "specifically told" Torres that attorney would get back to him.  He states that Rushmore nonetheless contacted him directly via telephone at least four times and continued to mail him other communications.

[11] This claim is based on Williams's conversation with John Torres on October 8, 2014.

law because the underlying communications occurred in the context of an attempt to enforce a security interest rather than an attempt to collect a debt. Rushmore contends that actions undertaken to enforce a security interest are not subject to the FDCPA. I conclude that the FDCPA applies to the actions alleged in this case.

Some courts have held that communications sent for the sole purpose of enforcing a security interest are not subject to the FDCPA. For example, in <u>Derisme v. Hunt Leibert Jacobsen P.C.</u>, 880 F. Supp. 2d 339, 361-62 (D. Conn. 2012), the Court held that court filings and related communications surrounding a non-judicial mortgage foreclosure did not constitute debt collection activities.[12] The Court relied on § 1692a(6), which provides that for purposes of § 1692f(6),[13] the term debt collector "also

---

[12] In <u>Derisme</u>, the court addressed whether the defendant was engaged in "debt collection activity" such that it was a "debt collector" under the FDCPA. <u>See</u> 15 U.S.C. §§ 1692a(6). As other courts have noted, "[w]hether a communication constitutes a 'debt collection activity' under section 1692a(6) and whether that same communication constitutes a communication sent 'in connection with the collection of any debt' under section 1692e appear to be analogous inquiries." <u>Cicalo v. McCalla Raymer Leibert Pierce</u>, No. 3:16-CV-339 (SRU), 2017 WL 3444675, at *4 (D. Conn. Aug. 10, 2017). Here, Rushmore's argument is essentially that if *enforcers* of security interests are exempt from the FDCPA because they are not "debt collectors," *enforcement* of a security interest does not constitute "debt collection."

[13] § 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstances.

includes" persons whose "principal purpose" is the "enforcement
of security interests." See id. at 361. Because § 1692a(6)
expressly identifies enforcers of security interests as debt
collectors for purposes of only one subsection of the statute,
the Court concluded that § 1692a(6) implicitly exempts enforcers
of security interests from other sections of the statute. See
id. (citing Warren v. Countrywide Home Loans, Inc., 342 F. App'x
458, 460 (11th Cir. 2009)). The Court also observed that the
purpose of the FDCPA is "not implicated when a mortgagee is . . .
protected by the court system and Connecticut foreclosure law."
See id. at 367 (discussing Simmons v. Roundup Funding, LLC, 622
F.3d 93, 95 (2d Cir. 2010)).

Other courts have held that actions related to mortgage
foreclosure proceedings can be debt collection activities under
the FDCPA. They point out that "*every* mortgage foreclosure,
judicial or otherwise, is undertaken for the very purpose of
obtaining payment on the underlying debt, either by persuasion
(i.e., forcing a settlement) or compulsion (i.e., obtaining a
judgment of foreclosure, selling the home at auction, and
applying the proceeds from the sale to pay down the outstanding
debt)." Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th
Cir. 2013). These courts believe that the inclusion of enforcers
of security interests in § 1692a(6) "simply makes clear that some
persons who would be without the scope of the general definition

are to be included where § 1692f(6) is concerned." Id. (quoting

Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 236 (3d Cir.

2005) (brackets omitted)); accord Wilson v. Draper & Goldberg,

P.L.L.C., 443 F.3d 373, 378 (4th Cir. 2006).

I agree with this latter group of courts that actions

related to mortgage foreclosures are not categorically exempt

from the FDCPA. Holding otherwise, as Judge Underhill recently

explained, is to "imply an identity-based exclusion where

Congress did not expressly provide it." See Cicalo, 2017 WL

3444675, at *4 (noting that § 1692a(6) "specifically exempts from

liability certain classes of individuals" but does not include

enforcers of security interests).[14] This view is consistent with

the Second Circuit's holding in Hart (decided after Derisme) that

what matters is "the communication itself and not the identity or

intent of the sender." Id. (discussing 797 F.3d at 226-27).

Moreover, even assuming enforcers of a security interest are

exempt from FDCPA liability, any such exemption is limited to the

foreclosure process and other closely related communications; it

does not apply to "an attempt to collect money in addition to the

---

[14] See also Alaska Tr., LLC v. Ambridge, 372 P.3d 207, 217
(Alaska 2016) ("[A] home mortgage is, for most individuals, their
largest and most long-term debt and the most likely to be
affected at some point by unforeseen financial difficulties. The
lender's foreclosure on its security — the home — is likely to be
a devastating prospect for the homeowner, who may therefore be
particularly susceptible to abusive collection practices. If
Congress had intended to exclude such a substantial segment of
consumer debt from the reach of the FDCPA, it could easily have
said so explicitly.").

enforcement of a security interest." <u>Derisme</u>, 880 F. Supp. 2d at 364.[15]  In this case, the foreclosure process did not begin until after the communications at issue, and none of the defendant's actions involved actual "enforcement," i.e., taking steps to "repossess or disable property." See Glazer, 704 F.3d at 464.

Rushmore also argues that communications regarding a *loan modification to avoid foreclosure* are not "communications in connection with the collection of a debt."  Courts are split on this issue as well.  "Some courts have concluded that, as a rule, loan modification communications do not constitute communications 'in connection with the collection of any debt.'"  <u>Farquharson v. Citibank, N.A.</u>, 664 F. App'x 793, 801 n.6 (11th Cir. 2016) (collecting cases).  As Rushmore points out, at least one court in this Circuit has endorsed this view.  See <u>Roth v. CitiMortgage Inc.</u>, No. 12-CV-2446 SJF WDW, 2013 WL 5205775, at *10 (E.D.N.Y.

---

[15] See <u>also</u> <u>Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1211, 1217–18 (11th Cir. 2012) ("The rule the [defendant] asks us to adopt would exempt from the provisions of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt. That rule would create a loophole in the FDCPA. A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a 'debt' even if it is secured.").

Sept. 11, 2013), <u>aff'd on other grounds</u>, 756 F.3d 178 (2d Cir. 2014).

Other courts disagree.  For example, in <u>Gburek v. Litton Loan Serv. LP</u>, 614 F.3d 380 (7th Cir. 2010), the plaintiff defaulted on her mortgage loan and the defendant loan servicer "sent her a letter offering to discuss ways she could avoid losing her home in foreclosure and asking for her current financial information." 614 F.3d at 381.  The letter referenced "foreclosure alternatives" and included a debt collection notice but no specific demand for payment.  <u>Id.</u>  The Court held that the letter was sent in connection with the collection of a debt, distinguishing <u>Bailey v. Security Nat'l Serv. Corp.</u>, 154 F.3d 384 (7th Cir. 1998).  <u>Bailey</u> held that a loan servicer's letter listing payment due dates under a forbearance agreement was not a communication in connection with the collection of a debt, despite containing a warning that a failure to pay could trigger an obligation to repay the entire loan.  <u>Id.</u> at 388-89.  The <u>Gburek</u> court noted that the communication in <u>Bailey</u> involved an existing forbearance agreement and the plaintiff had made all the payments.  614 F.3d at 384.  As a result, the letter was "merely a description of the current status of the debtor's account." <u>Id.</u> (citing <u>Bailey</u>, 154 F.3d at 388-89).  In contrast, the letter in <u>Gburek</u> evinced "an attempt to collect [plaintiff]'s defaulted home loan - by settlement or otherwise." <u>Id.</u>

I agree with the reasoning in <u>Gburek</u> and find Rushmore's reliance on <u>Roth</u> misplaced. <u>Roth</u> relied in part on <u>Bailey</u>, which the Seventh Circuit has said does not stand for any categorical rule. Moreover, <u>Roth</u> is premised on the view that "communications which do not demand payment" are not debt collection activities. See <u>Roth</u>, 2013 WL 5205775, at *10 ("Courts have held that communications which do not demand payment and relate to debt restructuring do not seek collection of a debt, and therefore cannot give rise to an FDCPA violation.") (citing 154 F.3d at 388-89). <u>Hart</u>, decided after <u>Roth</u>, cites <u>Gburek</u> approvingly for the proposition that "the absence of a demand for payment is just one of the several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." 797 F.3d at 227 (quoting <u>Gburek</u>, 614 F.3d at 385). That the analysis is a "commonsense inquiry" cautions against applying a categorical rule.

Applying the objective test to the circumstances presented here, a consumer in Williams's position - negotiating a loan modification to avoid foreclosure despite bearing no personal liability on the loan due to a bankruptcy discharge - could reasonably believe that communications related to the loan modification are in connection with the collection of a debt. As in <u>Hart</u>, most of the written communications included a notice

stating that Rushmore was acting as a debt collector; some referenced the FDCPA, discussed the status of the loan, and provided instructions for making payments.  As in Gburek, the communications included discussion of foreclosure alternatives and repayment terms.  In one telephone conversation, a Rushmore representative allegedly stated that Rushmore's attorneys would soon foreclose on the property.  Though some of the communications concerned an existing forbearance agreement, as in Bailey, the bulk of the communications - including the forbearance agreement itself - revolved around settling the defaulted home loan.  Indeed, a letter dated February 20, 2015, refers to Williams's "desire to settle this debt with Rushmore."

Rushmore argues that none of the communications could be interpreted as an attempt to collect a debt because Williams had received a bankruptcy discharge and each written communication included a bankruptcy disclaimer.  In view of Williams's bankruptcy discharge, Rushmore argues, there was no "debt" to collect.  Rushmore also points out that the forbearance agreement, which Williams signed, states that Rushmore would not pursue any discharged obligation against Williams personally and that the "Agreement is not intended as a demand for payment."

Rushmore's arguments have some force but they are not dispositive.  The FDCPA defines "debt" broadly as "any obligation or alleged obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Court of Appeals has recognized that "an attempt to collect a discharged debt in violation of the Bankruptcy Code" might also violate the FDCPA. Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86, 92 (2d Cir. 2016). Cases cited by Rushmore support the view that a bankruptcy debtor can continue to have "a credit relationship in the form of an obligation to the lender, even after discharge." Germain v. Bank of America, N.A., 2014 WL 5802018, at *5 (W.D. Wisc. Nov. 7, 2014); see also In re Vogt, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) ("[T]he discharge does not wipe away the debt."). A post-discharge consumer's "obligation" can take the form of "pay[ing] money," 15 U.S.C. § 1692a(5), if "the consumer . . . make[s] new arrangements with the lender to keep the property," rather than "return[ing] it to the lender or wait[ing] for it to be foreclosed upon." Germain, 2014 WL 5802018, at *5.

Nor do the disclaimers entitle Rushmore to summary judgment. Not all the written communications at issue included a disclaimer,[16] and the record is silent with respect to any verbal

_____

[16] A letter sent on February 20, 2015, does not contain a disclaimer.

disclaimers during phone calls between Rushmore and Williams. More important, a consumer could reasonably interpret the communications to be in connection with the collection of debt despite the disclaimers.

Whalen v. Specialized Loan Serv., LLC, 155 F. Supp. 3d 905 (W.D. Wisc. 2016) is instructive. In that case, the plaintiff had received a bankruptcy discharge on his mortgage. Id. at 906. A debt collector sent him one letter simply stating the amount owed and another letter stating that the foreclosure process was imminent and offering to "discuss alternative payment plans." Id. at 911. Both letters included a debt collector notice and bankruptcy disclaimer. Id. at 907-11. The Court concluded that the first letter could not be interpreted as being in connection with the collection of a debt because there was "no language in the letter that would lead plaintiff to doubt that the bankruptcy disclaimer applied to her." Id. at 908. In contrast, the second letter qualified because "nothing in the disclaimer undermines the previous statements in the letter that foreclosure may be imminent if plaintiff does not enter into a payment plan with defendant." Id. at 911; accord Gagnon v. JPMorgan Chase Bank, N.A., 563 B.R. 835, 846 (N.D. Ill. 2017). The Court stated that the "defendant's representation in the disclaimer that the letter was not a demand for payment mean[t] little when at the same time

defendant was telling plaintiff that she risked foreclosure if she did not pay up." Id.

Here, although many of the communications included a bankruptcy disclaimer, like the second letter in Whalen, they contemplated a payment plan meant to avoid foreclosure. In other words, they could reasonably be interpreted as attempts to collect the debt despite the bankruptcy disclaimers. See Green v. Specialized Loan Servicing, LLC, No. 15-CV-513-JDP, 2016 WL 3963255, at *4 (W.D. Wis. July 21, 2016) ("[I]n this case, the bankruptcy disclosure in the Notice and Verification are outweighed by the other aspects of the communications that indicate an attempt to collect.").

There is one communication that could not be interpreted as being in connection with the collection of a debt, however: Hunt's letter to Williams dated December 29, 2014. This letter begins with a conspicuous bankruptcy disclaimer and a statement that the letter is intended only to notify Williams of his rights. The letter does not reference Rushmore, let alone the ongoing loan modification discussions between Rushmore and Williams. Like the first letter in Whalen, there is "no language in the letter that would lead plaintiff to doubt that the bankruptcy disclaimer applied to her." 155 F. Supp. 3d at 908. Thus, even assuming the letter could be attributed to Rushmore,

it could not reasonably be interpreted as a communication in connection with the collection of a debt.

        b. Claims Under § 1692f(1)

Williams's claims under § 1692f(1) are based on Rushmore's inclusion of allegedly improper late charges in its monthly statements and certain other communications, including the first letter sent by Rushmore to Williams. Each of these communications provided the amount due, due dates, and instructions for making payment. They also included a debt collection notice and bankruptcy disclaimer.

But for the bankruptcy disclaimers, the Second Circuit's decision in <u>Hart</u> would be controlling. The monthly statements and other communications are similar to the "Transfer of Servicing" letter at issue there. Unlike in <u>Hart</u>, however, a post-discharge consumer could not reasonably interpret these communications as being in connection with the collection of a debt in light of the bankruptcy disclaimer. All the communications conspicuously stated that if the recipient had received a bankruptcy discharge, Rushmore was not attempting to collect money. And, like the letter from Hunt discussed above, none of the communications referenced the ongoing loan modification discussions between the parties. Because "no language in the letter [could] lead [Williams] to doubt that the bankruptcy disclaimer applied to h[im]," 155 F. Supp. 3d at 908,

the communications do not qualify.  Accordingly, Williams's
claims under § 1692f(1) are dismissed.

       c. Claims under § 1692e(8)

Williams claims that Rushmore violated § 1692e(8), which
prohibits "[c]ommunicating or threatening to communicate to any
person credit information which is known or which should be known
to be false, including the failure to communicate that a disputed
debt is disputed."  This claim is based on Rushmore's reports to
Experian from December 2013 to December 2014, which stated that
Williams was in default and the property was in foreclosure, and
failed to state that the debt was disputed.

Rushmore argues that credit reporting absent an "overt act
to collect a debt" is not a communication in connection with the
collection of a debt.  For this proposition, Rushmore relies on
cases applying the Bankruptcy Code, not the FDCPA.[17]  Regardless
of the status of such reports under the Bankruptcy Code, I think
a consumer could reasonably believe that reports to credit rating
agencies are communications sent in connection with the
collection of a debt under the FDCPA.  As other courts have
noted, "threatening to report and reporting debts to CRAs is one
of the most commonly-used arrows in the debt collector's quiver."

---

[17] See In re Vogt, 257 B.R. 65, 68 (Bankr. D. Colo. 2000)
(dismissing FDCPA claims without prejudice for lack of
jurisdiction); In re Irby, 337 B.R. 293 (Bankr. N.D. Ohio 2005)
(action to recover for violation of discharge injunction; no
mention of the FDCPA).

Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010), aff'd, 413 F. App'x 925 (8th Cir. 2011); accord Causay v. Wells Fargo Bank, N.A., No. 16-CV-7398, 2016 WL 7188167, at *6 (N.D. Ill. Dec. 12, 2016) (collecting cases); see also Garcia-Contreras v. Brock & Scott, PLLC, 775 F. Supp. 2d 808, 827 (M.D.N.C. 2011) ("To the extent Defendants' position relies upon the assumption that only communications with the consumer can constitute 'collection of the debt,' they have not provided any authority to support it and it is contrary to case law.").

Rushmore also argues that Williams's claims under § 1692e(8) fail on the merits.  Again relying on cases applying the Bankruptcy Code,[18] Rushmore contends that it was permissible to report the debt as in default because Williams maintained a credit relationship with Rushmore and Rushmore merely reported Williams's prior delinquencies.  Rushmore also takes issue with William's contention that it should have known the debt was disputed simply because the debt had been discharged in

---

[18] See Vogt, 257 B.R. at 71 ("The creditor was under no obligation under the Bankruptcy Code to change the way it reported the status of the loan."); In re O'Connell, No. 4:05BK07616-JMM, 2008 WL 5046496, at *1 (Bankr. D. Ariz. Oct. 29, 2008) ("All that a bankruptcy discharge does, in 'releasing' a debtor's personal liability is to bar a creditor's right to pursue such in personam mode of enforcing its debt. . . . . [A] creditor's derogatory remarks, to its credit bureaus, is not inaccurate if what it is reporting are simply the facts of non-payment and prior delinquencies.).

bankruptcy. Rushmore also argues that its statements that the property was in foreclosure were accurate given its referral of the loan to foreclosure counsel in 2013.

Though these arguments may have merit, the current record permits a finding that Rushmore's reports to Experian were inaccurate. Neither party has produced evidence regarding this claim in relation to the present motion. In connection with another motion, however, Williams submitted exhibits showing that Rushmore's reports to other credit ratings agencies reflected his bankruptcy discharge and did not state that the property was in foreclosure. <u>See</u> Pl.'s 1st Motion in Limine (ECF No. 94). This suggests that the reports to Experian were false. Moreover, even if it was accurate to state that Williams was in default and fail to state that the debt was disputed, Rushmore has not explained why it was accurate to report the property as in foreclosure merely because foreclosure counsel had been hired.

## IV. <u>Conclusion</u>

Accordingly, plaintiff's motion for reconsideration is denied (ECF No. 144) and Rushmore's motion for summary judgment is granted in part and denied in part (ECF No. 129). Plaintiff's claims under 15 U.S.C. § 1692f(1) are dismissed.

So ordered this 31st day of March 2018.

/s/<br>
Robert N. Chatigny<br>
United States District Judge